LaRue BROWN, Individually and on behalf of her minor children, et al.,
Plaintiffs,

v.

Helene WOHLGEMUTH, Individually and in her capacity as the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, et al.,
Defendants.

Civ. A. No. 74–45.

United States District Court,
W. D. Pennsylvania.

Jan. 24, 1974.

Judd F. Crosby, Michael Nemec, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for plaintiffs.

John M. Duff, Deputy Atty. Gen., Donetta W. Ambrose, Asst. Atty. Gen., Pittsburgh, Pa., Louis Kwall, Dept. of Public Welfare, Pittsburgh, Pa., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF COURT

MARSH, Chief Judge.

This is a class action for injunctive relief under the Civil Rights Act, 42 U.S.C. § 1983, in which plaintiffs seek to enjoin Helene Wohlgemuth, Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, and Edward Kalberer, Executive Director of the Allegheny County Board of Assistance, Department of Public Welfare, from reducing or suspending the January 15, 1974, Aid to Families with Dependent Children grants to the named plaintiffs and the class they represent. On January 18, 1974, a temporary restraining order was issued granting plaintiffs and their class relief,[1] and on January 23, 1974, a hearing on plaintiffs' application for preliminary injunction was held. After hearing and upon due consideration of the evidence adduced this court makes the following:

## FINDINGS OF FACT

1. The Commonwealth of Pennsylvania participates in the Federal Aid to Families with Dependent Children (A.F.D.C.) program established by the Social Security Act of 1935, 42 U.S.C. § 601 et seq.

2. Under Pennsylvania's plan of implementation, grants of A.F.D.C. benefits are paid semi-monthly by the State Department of Welfare to eligible parents and relatives of needy dependent children for the benefit of said children.

3. The recipients of A.F.D.C. grants are aware by previous notice that the grants are to be received on a semi-monthly basis. The grants are paid semi-monthly so as to allow the recipients to budget their grants.

4. Plaintiffs and the class they represent are all duly qualified and eligible recipients of A.F.D.C. grants residing in

1. The lengthy complaint and accompanying motions were assigned to this court on January 16, 1974, at which time a protracted civil jury trial was in its final stages, and a hearing could not be held until January 18, 1974, at which time Assistant Attorney General Louis Kwall appeared for the defendants, and at which the defendant Kalberer was present.

Allegheny County, Pennsylvania, whose A.F.D.C. checks for the period January 15, 1974 to January 31, 1974, were summarily suspended by the named defendants.

5. Payment schedules showing semi-monthly payments have been mailed out to recipients of A.F.D.C. grants.

6. Persons whose welfare department case designation numbers end in "OC" have been notified by the Department of Public Welfare that they would receive a semi-monthly A.F.D.C. check on January 15, 1974.

7. Allegheny County has a "bank issuance" program for distributing A.F.D.C. checks whereby the checks are sent directly to local banks where they are picked up by recipients. The purposes of the program are to make sure the recipients receive the checks and thereby avoid the necessity of issuing duplicate checks and thus save money.

8. On December 31, 1973, State Welfare checks were not only sent to designated banks in Allegheny County but 2,200 duplicate checks were mailed directly to homes of recipients due to an error on the part of the Department of Public Welfare.

9. The Department of Welfare was aware of its error almost immediately after the checks were sent to the banks, and the participating banks were told to return the welfare checks which had not been claimed. The participating banks returned approximately 1,200 of the duplicate checks but approximately 980 checks had already been issued.

10. Recipients of duplicate welfare checks returned approximately 200 to the Allegheny County Board of Public Assistance and 173 to the Department of Treasury in Harrisburg. Approximately 563 checks were not returned and of this total approximately 325 represent A.F.D.C. grant checks. Each check, on the average, represents benefits for 2.4 children.

11. In order to avoid possible losses caused by the cashing of duplicate checks, the Pennsylvania Department of Welfare suspended the issuance of the January 15, 1974, A.F.D.C. welfare checks to recipients who had received but had not returned duplicate December 31, 1973 checks.

12. On January 10, 1974, the Department of Welfare mailed a notice to recipients who had received but had not returned duplicate checks stating in part:

"If you have not returned one of your December 31, 1973 checks or the cash by the time you receive this notice, do not go to the bank for your next check on January 15 because the bank will not have any check for you for that payment day. The second check you received on December 31 will be considered an advance payment for the January 15 payment day."

No opportunity was afforded to plaintiffs or their class for a prior termination, reduction or suspension hearing, nor were they informed in the notice of their right to a hearing.

13. Subsequently, the Department of Welfare withheld the January 15, 1974 A.F.D.C. welfare checks from plaintiffs and the class they represent.

14. Plaintiff LaRue Brown is an eligible recipient of a $120.00 semi-monthly A.F.D.C. grant on behalf of her two minor sons. She received two $120.00 A.F.D.C. checks on December 31, 1973, and spent all the money on food and other necessities. She had no reason to believe that her January 15, 1974, check would not be forthcoming until she received the notice on January 11, 1974. Since January 15, 1974, she has had no money except what she has borrowed from her neighbors. She is presently behind in her rent, and court proceedings have been commenced by the Pittsburgh Housing Authority to evict her and her sons from their home. The Department of Public Welfare refuses to advance her money to pay her rent, and she and her sons have no place to go if evicted. She could have paid her rent in full if the January 15th check had been sent to her.

15. Plaintiff Carolyn Robinson is an eligible recipient of a $103.00 semi-monthly A.F.D.C. grant on behalf of her minor daughter. In the first part of January, 1974, she received two $103.00 A.F.D.C. checks. She took one check to the bank which refused to cash it. She then destroyed that check. On January 15, 1974, instead of receiving her second A.F.D.C. check, she received the notice stating that the bank would not have a check for her on that payment date. When she informed her caseworker what had happened she was told that she should not have destroyed the December 31st duplicate check because now she cannot prove she didn't cash it. Since January 15, 1974, she has been living by borrowing money from friends.[2]

16. Plaintiff Mary Barrett[3] is an eligible recipient of $103.00 semi-monthly A.F.D.C. grant on behalf of her minor daughter. In the first part of January she received two $103.00 A.F.D.C. grants which she spent by purchasing a coat for her minor daughter, food stamps, paying her rent and paying a $50.00 bill. She believed that the duplicate check was connected with a welfare grant increase she had heard about and that she would receive another check on January 15, 1974. She has had no money since January 15, 1974, and is borrowing food from her neighbor for herself and her daughter.

17. Plaintiff Margaret Murphy is an eligible recipient of a $187.50 semi-monthly A.F.D.C. grant on behalf of her four minor children. On December 31, 1973, she received two A.F.D.C. checks which she used to pay her rent and outstanding Christmas bills. She found out for the first time that her January 15, 1974, check was not coming on January 11, 1974, when she received the notice from the Department of Welfare. She has had no money to live on since January 15, 1974, except a $10.00 food allowance provided by "Family Services".

18. Plaintiff Ruby L. Williams, who is ill and in need of hospitalization, has nine natural children, a grandchild and three other children in her care, custody and control, and is an eligible recipient of a semi-monthly A.F.D.C. grant of an undisclosed amount. On December 31, 1973, she received two A.F.D.C. checks and believing one to be a "makeup" check for one omitted in 1973, she cashed both checks and spent the money. On January 11, 1974, she was notified that she would not receive a check on January 15, 1974. Since January 15, 1974, she has been buying food for herself and her children by borrowing money from her daughters.

19. Plaintiff Mary Harper is an eligible recipient of a $206.00 semi-monthly A.F.D.C. grant on behalf of her four minor children. On January 2, 1974, she received two $206.00 A.F.D.C. checks which she spent on food stamps and rent. Until she received the notice from the Department of Public Welfare on January 11, 1974, she believed she would receive a second check on January 15, 1974. As of January 15, 1974, she had $8.00 remaining from the two checks, at the time of the hearing she had $.50 left.

20. The Welfare Rights Organization of Allegheny County has received 80 to 100 calls concerning the withholding of the January 15, 1974, A.F.D.C. grants at its offices in the eight welfare districts of Allegheny County. Many of the callers complained that they had spent the proceeds of both December 31, 1973 checks believing that they represented an increase in benefits.

21. A large number of eligible recipients who received but did not return the duplicate December 31, 1973 A.F.D.C. checks and as a result have had their January 15, 1974 A.F.D.C. checks with-

2. The court ordered payment of $103.00 to Mrs. Robinson forthwith and the defendants stipulated that they would comply.

3. Plaintiffs Mary Barrett and Margaret Murphy testified that they didn't have money for transportation and that someone from their attorneys' office had to pick them up at their homes and bring them to the courthouse.

held (which group constitutes plaintiffs and their class) are suffering irreparable harm because they and their children are presently without adequate funds to live and are being forced to live below minimal subsistence levels.

22. The defendants, Helene Wohlgemuth and Edward Kalberer, were aware of the terms of the temporary restraining order issued by this court on January 18, 1974, but have taken no steps to attempt to comply with that order.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this action against the individual defendants, Helene Wohlgemuth and Edward Kalberer, by virtue of the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4). Johnson v. Harder, 438 F.2d 7, 11 (2d Cir. 1971).

2. Plaintiffs and their class represent duly qualified and eligible A.F.D.C. recipients who are entitled to procedural due process before their benefits are terminated. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

3. A pre-termination evidentiary hearing was necessary before benefits were terminated to plaintiffs and their class. Goldberg v. Kelly, *supra*.

4. Defendants violated the due process rights of plaintiffs and their class when they terminated their regularly scheduled January 15, 1974, payment without affording them an adequate notice or an opportunity for a due process hearing. Goldberg v. Kelly, *supra*.

5. Defendants' failure to dispatch notice at least ten days prior to the date of their action and their failure to include in the notice an explanation of the individual's right to a hearing violates federal requirements of timely and adequate notice in cases of intended action to discontinue, terminate, suspend or reduce assistance. 45 C.F.R. 205.-10(a)(4), Federal Register, Vol. 38, No. 157, August 15, 1973.

6. Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution have been violated by the challenged conduct. Caldwell v. Laupheimer, 311 F.Supp. 853 (E.D.Pa. 1969); U.S.D.A. v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

7. The A.F.D.C. program's purpose is the protection of needy, dependent children. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1967). The misconduct of a parent or other direct recipient of A.F.D.C. funds is not grounds for terminating A.F.D.C. payments. Cooper v. Laupheimer, 316 F. Supp. 264, 268 (E.D.Pa.1970).

8. The Social Security Act of 1935, 42 U.S.C. § 601 et seq. at § 602(a) requires "that aid to dependent children shall be furnished with reasonable promptness to all eligible individuals."

9. The State cannot withhold or suspend grants of aid to needy, dependent children in order to recoup prior duplicate assistance payments made in error by the State, even if the parent or other eligible recipient has fraudulently acquired the duplicate payment. Cooper v. Laupheimer, *supra*, at 270.

10. Having established payment schedules for individual recipients fixing the dates on which assistance will be received and making these dates known to the recipients, D.P.W. is not free to ignore these schedules as a result of its own error. Defendants' conduct of withholding the regularly scheduled check of January 15, 1974 is a violation of federal requirements that aid be furnished promptly to eligible individuals without any delay attributable to the agency's administrative process and that aid shall be continued regularly to all eligible individuals until they are found to be ineligible. 45 C.F.R. 206.10(a)(5), Federal Register, Vol. 38, No. 157, August 15, 1973.

11. The fact that some of the members of the class possibly have a

portion of the earlier duplicate payment in their possession which can be used for the children's benefit is not a sufficient basis to deny relief to all members of the class because: (a) defendants have shown no way in which these members of the class can be identified; (b) the harm to the children whose parents do not have such funds available is immediate and irreparable; (c) all members of the class have had their due process rights violated by summary termination of benefits; and (d) on this record, the interests of the children in receiving uninterrupted benefits outweighs the state's interest in preventing an increase in its fiscal and administrative burdens. Goldberg v. Kelly, *supra*, 264–266, 90 S.Ct. 1011.

12. The defendants and the State Department of Welfare have adequate remedies for preventing losses arising from the erroneous issuance of duplicate December 31, 1973, A.F.D.C. grant checks either by recoupment procedure which provides plaintiffs and their class procedural due process and is consistent with the Social Security Act of 1935, *supra*, or by following the restitution procedures set out in the Pennsylvania Department of Welfare Manual culminating in Civil proceedings against the recipient.

13. The plaintiffs and the class they represent are entitled to a preliminary injunction restraining the individial defendants from seeking restitution of duplicate assistance payments by summarily reducing or suspending the January 15, 1974, Aid to Families with Dependent Children grants to plaintiffs and the class they represent.

14. The defendants, Helene Wohlgemuth and Edward Kalberer, have not made any attempt to comply with this court's temporary restraining order issued January 18, 1974 and are in contempt thereof. Accordingly, these defendants have been fined the sum of $1000 each, said fines to be suspended if they have complied with the Temporary Restraining Order issued on January 18, 1974, on or before January 25, 1974.