Catherine **CARDINALE** et al.,
Plaintiffs,

v.

F. David **MATHEWS**, Defendant.

Civ. A. No. 74–930.

United States District Court,
District of Columbia.

Aug. 26, 1975.

Philip L. Goar, Los Angeles, Cal., for plaintiffs.

Robert M. Werdig, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, Chief Judge.

This case involves, as did another case recently before this Court, the requirements of procedural due process in the context of Title XVI of the Social Security Act (Supplemental Security Income Program). *See Hannington v. Weinberger*, 393 F.Supp. 553 (D.D.C.1975). Plaintiffs in this action attack three exceptions to the general rule contained in defendant's regulations that Supplemental Security Income (SSI) benefits are not to be reduced, suspended, or terminated without prior notice and some opportunity to challenge the proposed change in benefits.

On October 30, 1972, Congress established the Supplemental Security Income Program to become effective on January 1, 1974. Pub.L. No. 92–603, 86 Stat. 1329, 42 U.S.C. § 1381 *et seq.* (Supp. III, 1973). SSI replaced numerous state-administered programs with a new federal minimum income program administered by the Social Security Administration. *See* S.Rep. No. 92–1230, 92d Cong., 2d Sess. 383 (1972), H.R. Rep. No. 92–231, 1972 *U.S.Code Cong. & Admin.News*, p. 4992. The program

was designed to provide positive assurance that the nation's aged, blind, and disabled would no longer have to subsist on below-poverty-level incomes. S.Rep. No. 92–1230, *supra* at 384. Congress recognized that aged, blind, and disabled individuals may be in need notwithstanding Social Security benefits, Veterans' Administration benefits, or even private pension benefits. SSI was intended to supplement these other sources of income to free the poor from want and the indignities of poverty.

Currently under the SSI program, persons over 65, blind persons, and disabled persons are assured of an income of $146 per month for individuals and $219 for couples. 42 U.S.C. § 1382(b) (Supp. III, 1973).[1] Aged, blind, or disabled individuals or couples are eligible for assistance when their nonexcluded monthly income is less than $146 or $219 respectively, and their nonexcluded resources are $1500 or less in the case of an individual or $2250 or less in the case of an individual who has a spouse with whom he is living. 42 U.S.C. § 1382(a) (Supp. III, 1973); *see* 42 U.S.C. §§ 1382a(b), 1382b(a) (Supp. III, 1973). For example, an individual over 65 who is living alone, who receives $120 per month in nonexcludable income from other sources such as Social Security benefits or part-time employment, and who has resources of $1500 or less, would receive an SSI payment of $26 per month.

On July 29, 1974, defendant submitted a motion to dismiss or in the alternative for summary judgment. After the Court granted on October 17, 1974, plaintiffs' unopposed motion to amend their complaint, defendant submitted supplemental memoranda in support of his alternative motion to dismiss or for summary judgment on February 27,

---

1. In addition to these basic benefits, States may decide to make additional supplemental payments to eligible SSI recipients. If the State agrees to have the Federal Government make its payments, the Federal Government will pay the full administrative costs of making such payments, but if it makes its own payments, the State must pay its own administrative costs. 42 U.S.C. § 1382e (Supp. III, 1973); H.R.Rep.No.92–231, 1972 *U.S.Code Cong. & Admin.News*, p. 5014.

1975, and June 9, 1975. Plaintiffs have moved that this case be certified as a class action and on June 12, 1975, during oral argument on all pending motions, moved for summary judgment in their favor. It is these motions that are currently before the Court.

## I. THE PARTIES

Plaintiff Committee for the Rights of the Disabled is a nonprofit California corporation which has as its goal the protection of the legal rights of the disabled and the elderly. The plaintiffs allege that nearly all of its members receive SSI benefits.

Plaintiffs Cardinale, Gilmore, Gooch, and Wells were converted ("grandfathered") from state welfare programs to federal SSI on January 1, 1974. Plaintiff Hinds applied for SSI benefits on or about January 1974, was found eligible, and began receiving benefits in March 1974. All the individual plaintiffs had their SSI benefits terminated or reduced without prior notice or an opportunity for a hearing.

The following summary of each individual plaintiff's claim is based on affidavits submitted by them and by Sumner Whittier, Acting Director of the Bureau of Supplemental Security Income, Social Security Administration.[2]

Catherine Cardinale, who was 79 years old when this case was filed and lived alone in Santa Cruz, California, received her first SSI check for $195 in January 1974. Because she thought this amount too high, she called the local Social Security office, but was told that if she received that much she must be entitled to it. She received the same amount for the months of February and March. However, without any notice or hearing, her benefits were reduced to $98.80 in April. She alleges that someone at the local Social Security office told her that the reason her benefits were reduced was to recoup overpayments made in January, February and March.

Defendant asserts that plaintiff Cardinale should have been receiving $105.40 for the months January through March and, because of a Social Security increase, $98.80 for the month of April and thereafter. Defendant arrives at the $105.40 figure after subtracting $69.60 countable Social Security income and $60 unearned income from a base figure of $235. The erroneous payments for January through March were allegedly arrived at by failing to subtract anything for Social Security benefits and by charging plaintiff with only $40 of unearned income. In her second affidavit, however, plaintiff Cardinale denies ever having received $60 or any amount of unearned income.

Payne Gilmore, who was 80 years old and lived in Oakland, California, received $22 for the months of January through March 1974. In April 1974, he received an SSI payment of $70.20 and then allegedly received a letter from the Social Security Administration that the April increase was sent by mistake and that his payments would be reduced to the $22 level in May. Plaintiff Gilmore received an SSI check for only $9.90 in May. He received the same amount in June. He was told verbally that the reason his benefits were reduced was because his wife's income had to be taken

---

2. Affidavits of plaintiffs Cardinale, Gilmore, and Gooch are attached to the original complaint. Affidavits of plaintiffs Wells and Hinds and a second affidavit by plaintiff Cardinale are attached to the plaintiffs' amended complaint. Plaintiff Wells filed a second affidavit on October 16, 1974.

Sumner Whittier's affidavit concerning plaintiffs Cardinale, Gilmore, and Gooch is attached to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment filed on July 29, 1974. (Whittier Affidavit I). A second affidavit by Mr. Whittier as to plaintiffs Hinds and Wells is attached to Defendant's Supplemental Memorandum of Points and Authorities in Support of the Motion of the Defendant to Dismiss, or in the Alternative for Summary Judgment filed on February 27, 1975. (Whittier Affidavit II).

into consideration. However, plaintiff Gilmore and his wife had been separated since November 1973.

The defendant admits that plaintiff Gilmore's payment reductions were erroneous and that his wife's income should not have been considered. He should have received $82.30 for the months of January through March and because his Social Security benefits were increased, $70.20 thereafter.

Hattie Gooch is a 69 year old widow living in Modesto, California. Because the State incorrectly understated the amount plaintiff Gooch was receiving from the Veterans' Administration, she received $175 in SSI benefits, or $7 more than she was entitled to, for the months of January through April 1974. In April 1974, her VA benefits increased by $9. In May, plaintiff Gooch's benefits were reduced to $120 per month. The defendant admits that this figure is incorrect and has no explanation for the error. Both parties agree that plaintiff Gooch should have received $159 in May 1974.

Pearl Wells began receiving a $73 per month SSI benefit in January 1974. During January, plaintiff Wells' VA benefits were increased by $9 per month. She alleges that she reported this immediately to her local Social Security office. Plaintiff received no SSI check for May 1974. She was told that her payments were suspended because the caseworker added the entire amount of her increased VA benefits ($96) to the entire old amount ($87) and thereby obtained the erroneous sum of $183. The $9 increase should have been added to her previous monthly benefits ($87) for a correct total of $96. She also was informed that the defendant intended to recoup amounts erroneously paid because of an improper classification of her Veterans' Benefits. Plaintiff received $59 for June 1974 from SSI and in July she began to receive what defendant claims is the correct amount of $50 per month. Defendant argues that plaintiff Wells should have received a May SSI payment

and admits that her explanation of how the error occurred may be valid.

Defendant alleges that plaintiff Wells was married on November 19, 1974, and because of her husband's cash resources and unearned income, she became ineligible for SSI in December 1974. She has allegedly signed a statement indicating that she wished her ineligibility to become effective immediately and, therefore, her payments have been suspended. She returned voluntarily her December checks and received no payment for January.

Plaintiff Agnes Hinds applied for SSI benefits in December 1973 and was found eligible in March 1974. According to the defendants, plaintiff Hinds was paid $558.30 in March which represented retroactive payments to January 1974. Mrs. Hinds received her April check but did not receive her May check on time. She reported this nonreceipt to the Social Security Office and received her check later in May.

At the same time that plaintiff Hinds reported nonreceipt of her May check, she also reported that her husband had been in jail since January 4, 1974. Defendant alleges that Mr. Hinds was released on bail during February 1974, but was returned to jail, actually a hospital for the criminally insane, during March 1974. He properly had been converted to SSI in January 1974. Every month Mrs. Hinds would take her husband his SSI check, he would endorse it, and she would cash it.

Based on the information reported by plaintiff Hinds, the defendant determined that Mr. Hinds had been overpaid on two bases: (1) He was being paid as an individual rather than as part of a couple for the period of January through March; and (2) because of his institutionalization, he was entitled to no benefits after March 1974. Therefore, Mrs. Hinds' payments were suspended as of June 1974 to recover Mr. Hinds' overpayment.

Realizing that no finding had been made as to whether a waiver of overpay-

ment was appropriate, defendant states that plaintiff Hinds was asked, on July 10, 1974, to complete a "without fault" statement. All benefits previously withheld were allegedly paid on August 8, 1974. Plaintiff Hinds was denied a waiver of overpayment and on November 1, 1974, signed an agreement to refund her husband's overpayments at a rate of $25 per month.

In addition to affidavits summarizing the factual backgrounds of the individual plaintiffs' claims, the plaintiffs also have filed affidavits summarizing eight nonparty case histories.[3] The common thread running through these case histories like those of the plaintiffs, is that the individuals' SSI benefits were reduced without a prior notice and without opportunity for a hearing.

Defendant, F. David Mathews, Secretary of Health, Education and Welfare is sued in his official capacity as administrator of the Supplemental Security Income Program. *See* 42 U.S.C. § 1383b (Supp. III, 1973).

## II. REGULATION AT ISSUE

Regulations provide a four stage procedure to review both initial and continuing eligibility determinations for SSI benefits. 20 C.F.R. §§ 416.1401 *et seq*. After an initial determination, there are the reconsideration, hearing, and appeals stages within the agency, and the final stage is judicial review. Regulations provide in general that a person who was once found eligible for SSI benefits cannot have them reduced,

suspended, or terminated until the reconsideration stage, which includes notice and hearing rights, is completed. 20 C.F.R. §§ 416.1336(c), .1417, .1419(a).

The regulation that plaintiffs maintain is invalid allows a departure from the general procedure outlined above. It reads in relevant part as follows:

(a) Advance written notice of intent to discontinue payment because of an event requiring suspension or to reduce (see subpart D of this part), or terminate payments prior to effectuation of the action will be given in all cases except where:

(2) Amendments to Federal Law or an increase in benefits payable under Federal law (other than benefits payable under this part) require automatic suspension, reduction, or termination of benefits under this part [Amendment to Federal Law Exception] or

(3) Clerical or mechanical error has been made in effectuation of a determination or decision [Clerical Error Exception]; or

(4) (i) The facts indicating such suspension, reduction, or termination action were supplied by the recipient; and

(ii) The conclusions to be drawn from such facts are not subject to conflicting interpretations; and

(iii) The facts are complete. [No Conflict Exception]

20 C.F.R. § 416.1336(a).[4]

3. Affidavit of Annie Lones (exhibit 1 to Plaintiffs' Points and Authorities in Opposition to Motion to Dismiss and for Summary Judgment filed Sept. 3, 1974) (originally filed in *Miller v. Weinberger*, Civ.No. 74–212–NA–CV (M.D.Tenn.)); Affidavit of Rita Hernandez (filed Dec. 6, 1974); Affidavit of Sybil Lindie (filed Jan. 24, 1975); Affidavit of Daniel Brunner (filed Mar. 21, 1975) (Mr. Brunner is staff attorney with the Legal Aid Foundation of Long Beach, San Pedro, California, and his affidavit summarizes three individuals' cases); Affidavit of Lela Kirksey (filed Mar. 21, 1975); Affidavit of Hazel Detillion (filed Apr. 7, 1975);

*see* Affidavits of Sumner Whittier filed February 26, 1975, and June 9, 1975.

4. Plaintiffs argue that the defendant should not be allowed to recoup overpayments without advance notice and an opportunity for a hearing. Defendant stated that as of July 29, 1974, there had been no effort to involuntarily recoup overpayments and that procedural regulations were being written to comply with *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment

The Amendment to Federal Law and Clerical Error exceptions were apparently the bases on which defendant relied in reducing plaintiff Cardinale's benefits without notice and opportunity for a hearing. Specifically, defendant asserts that the reduction is valid because of an increase in plaintiff Cardinale's Social Security benefits and because of a $20 understatement of her unearned income.

It is unclear why plaintiff Gilmore's benefits were reduced to $9.90 in May 1974 from the facts presented in the affidavits although the defendant suggests that it may have been because the defendant subtracted Gilmore's Social Security benefits from an admittedly erroneous base figure of $22. (Whittier Affidavit I, ¶ 17). Thus it appears that the Amendment to Federal Law Exception was relied upon.

Defendant admits error in the case of plaintiff Gooch. (Whittier Affidavit I, ¶ 9). However, the figure that defendant maintains is the correct one takes into account an increase in plaintiff Gooch's VA benefits, and thus the Amendment to Federal Law Exception is apparently involved.

Plaintiff Wells' benefits were reduced after she reported an increase in her VA benefits. While the termination of her benefits in May was admitted by the defendant to be erroneous, he apparently arrived at it by applying the Amendment to Federal Law Exception and the No Conflict Exception. He clearly relied on these exceptions for the months of June through December. (See Whittier Affidavit II, ¶ 7).

Plaintiff Hinds' benefits were suspended based upon information supplied by her as to her husband's status, and thus the No Conflict Exception was apparently relied upon.

Defendant suggested at oral argument that as to the named plaintiffs and others for whom plaintiffs submitted affidavits, the three statutory exceptions at issue here were not relied upon, and therefore their validity is not properly before the Court. However, defendant did not cite nor is the Court aware of any other regulatory basis for the reduction, suspension, or termination of SSI benefits without prior notice. Moreover, in an effort to determine whether there was another basis on which defendant denied SSI benefits to the named plaintiffs in · this action, the Court asked counsel to advise it of any notice received simultaneously with or subsequently to the reductions, suspensions, and terminations at issue here. In a letter dated July 2, 1975, plaintiffs' counsel advised the Court that plaintiffs Cardinale, Gooch and Wells received no simultaneous or subsequent notice. Notices received by plaintiffs Hinds and Gilmore are not inconsistent with the application of the exceptions here at issue. In a letter dated August 9, 1975, defendant's counsel stated that he was unable to locate copies of any simultaneous or subsequent notices. He also stated that none of the named plaintiffs' files contained notations that normally are made when notices are sent. In light of the factual affidavits submitted by plaintiffs and defendant and in light of the defendant's failure to advise plaintiffs or this Court of any basis for his actions other than the regulatory exceptions at issue, the Court finds that the issue of the validity of defendant's three exceptions´ is properly before it.

### III. CLASS ACTION

Plaintiffs have moved to have this case certified as a class action pursuant to both Fed.R.Civ.P. 23(b)(1) and (b)(2). However, both their memorandum in support of their motion for class action certification and the facts of this case indicate that this case is properly

and Opposition to Plaintiffs' Motion for Preliminary Injunction at 12 n.*; *see Mattern v. Weinberger*, 519 F.2d 150 (3d Cir., 1975). In light of defendant's position and

because the Court does not interpret the regulation attacked by the plaintiffs to cover the recoupment situation, the Court will not address itself to the recoupment issue.

certifiable if at all as a 23(b)(2) class action.

The plaintiffs purport to represent all those who have had or are threatened with having their SSI benefits affected by 20 C.F.R. § 416.1336(a)(2), (3) and (4). Defendants question the standing of those who are "threatened" with having their benefits changed. However, if this Court should grant the declaratory and injunctive relief requested by plaintiffs, defendant's regulation would be invalid as to every recipient of SSI benefits whether or not plaintiffs' class includes those "threatened" with adverse action. In light of this consideration, and in light of the standing issue raised by a more broadly defined class, the Court will limit the definition of plaintiffs' class to those SSI recipients whose benefits have been affected. Moreover, since none of the named plaintiffs have had their benefits "terminated" as that term is defined in the regulations, the Court will further limit the class to those SSI recipients who have had their benefits reduced or suspended. *See* 20 C.F.R. §§ 416.1331–.1335.

■ The Court finds that the plaintiffs' class, as limited, clearly satisfies the four requirements of Rule 23(a) and the requirements of Rule 23(b)(2). Thus, the case will be certified as a class action. Moreover, the Court rejects defendant's suggestion that due process requires that the named plaintiffs herein give notice to the members of their class. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Childs v. United States Board of Parole*, 511 F.2d 1270, 1276 (D.C. Cir. 1974); *Woodward v. Rogers*, 344 F.Supp. 974, 980 n. 10 (D. D.C.1972).

## IV. MERITS

*Goldberg v. Kelly* is the fountainhead for the application of procedural due process rights to public assistance beneficiaries. 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Before deciding the central issue presented in that case of whether the due process clause required an oral evidentiary hearing before welfare benefits may be terminated, the Court made it clear that the due process clause does apply to welfare benefits. 397 U.S. at 261–62 & n. 8, 90 S. Ct. 1011. The extent to which due process applies, which is the issue presented by plaintiffs' complaint in this case, is influenced, the Court said, by the extent to which the recipient may be "condemned to suffer [a] grievous loss." 397 U.S. at 263, 90 S.Ct. at 1018.

The Court then decided that a pre-termination evidentiary hearing was necessary after considering the following factors: (1) The recipients' interest in avoiding loss of benefits; and (2) the governmental interest in summary adjudication. The Court, while noting that the termination of governmental benefits without a hearing has been allowed in emergency situations, stated that the crucial factor here "is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." 397 U.S. at 264, 90 S.Ct. at 1018. Moreover, the Court found that since the theory underlying public assistance is that it promotes the General Welfare, the government has an interest in seeing that eligible recipients are not erroneously terminated. Against these findings the Court weighed the government's interest in conserving fiscal and administrative resources. While admitting that pre-termination hearings would be a drain on these resources, the Court concluded, quoting the District Court's opinion, that

[t]he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and

produce evidence in rebuttal. *Kelly v. Wyman*, D.C., 294 F.Supp. 893, at 904–905.

397 U.S. at 266, 90 S.Ct. at 1019.

After deciding that due process required a prior hearing before plaintiffs' welfare benefits could be terminated, the Court then discussed the form that the due process hearing must take in the context of the particular case before it. The Court held that in addition to adequate and timely notice the following must be provided at a pre-termination hearing: (1) The right to confront and cross-examine witnesses; (2) the right to present arguments and evidence orally; (3) the right to retained counsel; (4) the right to a decision on the record; and (5) the right to an impartial decisionmaker. The Court stated that

[t]hese rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.

397 U.S. at 268, 90 S.Ct. at 1020 (footnote omitted). It left open the possibility that the requirement of oral argument might be dispensed with where there were no facts in issue and where

the application of a rule of law was not intertwined with factual issues. 397 U. S. at 268 n. 15, 90 S.Ct. 1011.

Thus the Court in *Goldberg* held that (1) due process applies to those receiving welfare benefits; (2) before vital welfare benefits can be terminated, where the government's only interest is conserving administrative and fiscal resources, due process requires notice and an opportunity for a hearing; and (3) where factual issues are involved or where factual issues are intertwined with legal issues, an oral evidentiary hearing is required. At least one case has held that points (1) and (2) apply to a reduction in SSI benefits as well as to their termination. *Lyons v. Weinberger*, 376 F.Supp. 248 (S.D.N.Y.1974). The court there reasoned that an erroneous decrease of even a few dollars to an eligible SSI recipient, who is by definition in need of the payments to which he is entitled since this is a minimum income program, may cause a grievous loss. 376 F.Supp. at 261. Moreover, the government's interest is somewhat less in the case of a reduction because continued payment in an individual case until a hearing would be less of a fiscal drain than continued payment in the case of a total termination. 376 F.Supp. at 261.[5]

---

5. A recent opinion by the Second Circuit could be interpreted to undermine *Lyons*. *Frost v. Weinberger*, 515 F.2d 57 (2d Cir., 1975).

In *Frost*, procedures for reducing survivors benefits payable to legitimate children because of claims by illegitimate children were attacked as violating due process. Those procedures provided for advance notice and an opportunity for written submissions before benefits could be reduced. A full evidentiary hearing was provided upon request, but reduction of benefits would not be stayed. The court held that a pre-termination oral evidentiary hearing was not required. In reaching this result, the court noted the Chief Justice's dissent in *Wheeler v. Montgomery*, 397 U.S. 280, 284–85, 90 S. Ct. 1026, 25 L.Ed.2d 307 (1970), in which he noted that *Goldberg* left unanswered whether due process required a full evidentiary hearing before welfare benefits are reduced. The court went on to weigh the interests in-

volved and distinguished *Goldberg* noting (1) that in this case, unlike *Goldberg*, the benefits involved were not based on need; (2) reduction in benefits rather than termination was involved; and (3) most importantly, their were other private interests, *i. e.*, those of the illegitimate children, tipping the scales in the opposite direction.

While the *Frost* case may put in doubt some of the more sweeping language in *Lyons*, it does not affect that decision insofar as applicable here. First, SSI benefits, unlike the survivors benefits in *Frost*, are based on need. Second, in this case there are no apparent countervailing private interests to be protected; and third, *Frost* dealt with the question of whether a full pre-termination evidentiary hearing was necessary, not with the more basic issue presented here of whether advance written notice and some prior opportunity to contest a determination must be provided.

Throughout his memoranda and at oral argument, defendant manifested some confusion as to the issue presented by plaintiffs' complaint. He argues vigorously that a full oral evidentiary hearing as outlined in *Goldberg* would be overly burdensome and unnecessary in the situations set out in his three exceptions. However, the precise issue presented here is not the form a due process hearing should take, but whether in light of *Goldberg* defendant can dispense entirely with advance written notice and thus some opportunity for a hearing, whatever its form.[6]

## A. AMENDMENT TO FEDERAL LAW EXCEPTION

Since SSI is a guaranteed minimum income program, a change in an individual recipient's other income or resources has a direct effect on the amount of SSI benefits to which he is entitled. 42 U.S.C. § 1382 (Supp. III, 1973). Except for specific statutory exclusions, other income includes all earned and unearned income from both public and private sources, *e. g.*, prizes and awards, gifts, support, rents, and dividends. *See* 42 U.S.C. § 1382a(b) (Supp. III, 1973); H.R.Rep.No.92–231, 1972 *U.S.Code Cong. & Admin.News*, p. 5012. In addition, income other than SSI includes benefits received under other federal programs. If there is an across-the-board increase in non-SSI benefits or if an individual's benefits are increased because of a change in the individual's particular circumstances, the Amendment to Federal Law Exception allows the defendant to suspend, reduce, or ter-

minate SSI benefits without advance notice or an opportunity for a hearing. 20 C.F.R. § 416.1336(a)(2).

In order to sustain his position that this exception does not violate due process, defendant relies on the following example: Approximately 70 per cent of all SSI beneficiaries also receive Social Security benefits. (Affidavit of Louis Schmuff, Director, SSI Provisional Staff of the Bureau of Data Processing, Social Security Administration, at 3). An increase in Social Security benefits requires a corresponding decrease in SSI benefits. The resulting SSI adjustments are made through a systems interface. The computer identifies those that receive both Social Security benefits and SSI benefits and automatically adjusts benefit amounts. To interject *Goldberg* rights into this process, the defendant maintains, would make the computer useless and would require manual handling of each claim. The defendant implies that this is an unreasonably burdensome result.

As plaintiffs point out, the defendant's analysis contains a major flaw. Although defendant confidently asserts that an amendment to federal law may "automatically" require an adjustment of SSI benefits, he fails to recognize, or at least minimizes, the possibility that specific amendments to federal law may not apply to the person against whom defendant directs his adjustment. For example, the defendant might erroneously reduce SSI benefits of one who is not even receiving Social Security benefits. *See Lyons v. Weinberger*, 376 F.Supp. 248, 262 (S.D.N.Y.1974); *Mothers' and*

---

**6.** Plaintiffs' attempt to show that defendant can avoid a full evidentiary hearing in some cases by referring to defendant's regulations governing Aid to Families with Dependent Children. Those regulations require that when state or federal law mandates an automatic grant adjustment, notice must be mailed 10 days before the date of the action. 45 C.F.R. § 205.10(a)(4). Moreover, the regulations provide that

  [i]f the recipient requests a hearing within the timely notice period assistance shall not be suspended, reduced, discontinued or

terminated . . . until a decision is rendered after a hearing, unless a determination is made *at the hearing* that the *sole* issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation.

45 C.F.R. § 205.10(a)(6)(i)(A) (emphasis added).

Thus, the AFDC recipient must both make a request and show as an initial matter that an issue of fact exists in his case before an evidentiary hearing must be held.

*Children's Rights Organization v. Sterrett,* 467 F.2d 797, 800 (7th Cir. 1972); Affidavit of Annie Lones, note 2 *supra.*[7]

Defendant relies on a number of cases that draw a distinction for due process purposes between adjudication and rulemaking. *Provost v. Betit,* 326 F.Supp. 920 (D.Vt.1971); *Merriweather v. Burson,* 325 F.Supp. 709 (N.D.Ga.1970), *aff'd in part, rev'd in part,* 439 F.2d 1092 (5th Cir. 1971); *Dullea v. Ott,* 316 F.Supp. 1273 (D.Mass.1970); *Smith v. Graham,* (CCHPov.L.Rep. ¶ 1715.30 (D.Kan.1971); *Riggins v. Graham,* 20 Ariz.App. 196, 511 P.2d 209 (1973).[8] These cases are inapplicable. Plaintiffs in those cases were attacking the power to issue certain regulations or the assumptions underlying substantive provisions. Those cases make clear that where plaintiffs, like plaintiffs here, present factual issues in their individual cases, due process protections must be afforded. *See, e. g., Provost v. Betit,* 326 F.Supp. at 924; *Merriweather v. Burson,* 325 F.Supp. at 711; *Dullea v. Ott,* 316 F.Supp. at 1276.

By suggesting that the above cases support his position, the defendant views the facts from his perspective only, *i. e.,* that he has a right to implement an across-the-board change in benefits without the administrative burden of explaining himself to every recipient. However, what the plaintiffs demonstrate is that even across-the-board changes may raise factual issues in individual cases, *e. g.,* whether a particular individual receives the Social Security benefits that have been increased. Moreover, the defendant even admits that factual issues may arise in the context of this exception to which *Goldberg* applies. Memorandum of Points and

Authorities in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Opposition to Plaintiffs' Motion for Preliminary Injunction at 12 n.**, 15. Without any prior written notice and some opportunity to contest a determination under this exception until it is an accomplished fact, the danger of erroneous benefit determinations, the target of *Goldberg,* is substantially increased.

## B. CLERICAL ERROR EXCEPTION

Defendant's regulations dispense with advance notice or an opportunity for a prior hearing if a clerical or mechanical error has been made. 20 C.F.R. § 416.-1336(3). Citing *Black's Law Dictionary* (4th ed. rev. 1968), defendant defines a clerical error as one involving a mistake in writing or copying and a mechanical error as a mistake produced by a machine. Officials state, in affidavits submitted by the defendant, that machine malfunctions, mathematical computation errors, and keypunching errors are the situations contemplated by their exceptions. (Affidavits of Louis Schmuff, James Forbus, and Harry Overs (Attached to Defendant's original Motion to Dismiss)). Mr. Overs, Assistant Bureau Director, Operating Policies and Procedures, Bureau of District Office Operations, states that "[d]istrict office personnel have been trained, if they have any doubt as to the application of this exception, to treat the situation as requiring *Goldberg* notice of planned action." (Affidavit of Harry Overs, ¶ 2).

Defendant, having admitted by his own regulation that a clerical or mechanical error may occur, appears to maintain that his corrections are infallible. Because if defendant admits that

---

7. At oral argument on June 12, 1975, defendant for the first time stated that the Amendment to Federal Law Exception was used only in situations where a computer tie-in with SSI existed. Nothing in the language of 20 C.F.R. § 416.1336(a)(2) so limits the regulation's scope, and the case summaries of Gooch and Wells appear inconsistent with defendant's assertion. Clearly,

where no direct computer tie-in exists, the possibility or error is heightened.

8. Plaintiffs discuss two additional cases in accord with those cited by the defendant. *Gonzales v. Vowell,* 490 F.2d 475 (5th Cir. 1974); *Velazco v. Minter,* 481 F.2d 573 (1st Cir. 1973).

his corrections may themselves be erroneous, there remains the possibility of factual mistakes which, as *Goldberg v. Kelly* teaches, it is the role of procedural due process protections to prevent.

The plaintiffs have cited two cases which strongly support their position in this case. *Brower v. Wohlgemuth*, 371 F.Supp. 863 (E.D.Pa.1974), *aff'd without opinion*, 492 F.2d 1238 (3d Cir. 1974); *Brown v. Wohlgemuth*, 371 F. Supp. 1035 (W.D.Pa.1974). Both cases deal with essentially the same factual situation. The Pennsylvania Department of Public Welfare was attempting, *inter alia*, to convert to a "bank issuance" system whereby welfare checks were to be sent directly to local banks to be picked up by recipients rather than sent directly to recipients' homes. However, due to an error in programming the computers, those persons due to receive benefits on December 31, 1973, were sent two checks—one via the bank and one sent directly to their homes. Some persons immediately returned the extra check, some thought they were entitled to the extra check, and others, in the court's words, followed the self-help doctrine of finders keepers. On January 11, 1974, four days before the next welfare payment was due, a notice was sent to those recipients who had not returned their second December 31st check informing them that they would receive no January 15th check. Of course, by this time many had spent these extra checks fully expecting that they would receive their regularly scheduled check on January 15, 1974.

Both *Brown* and *Brower* held that *Goldberg v. Kelly* was fully applicable to these facts, and therefore, that the plaintiffs were entitled to procedural due process hearings before their January 15th checks could be withheld.[9] As the *Brower* opinion noted, some persons whose checks were to be withheld never received two checks. 371 F.Supp. at 867. Moreover, both *Brown* and *Brower* suggested that upon notice and an opportunity to speak some recipients might be able to demonstrate circumstances making it unfair to withhold their January 15th checks. As the court in *Brower* concluded

Perhaps the administrative errors of DPW [Department of Public Welfare] and its subsequent attempts to rectify those mistakes were caused by well meaning persons traveling the high road of good intentions. But good intentions are not the equivalent of food for the stomach, heat for the home, or clothing for the body. The courts have recognized that, for the poor, administrative "bungling" is more than a mere "happening"; it can be a total crisis. Accordingly, the state cannot preemptorily correct its past errors as if one were dealing with stones and rocks.

371 F.Supp. at 871 (footnote omitted). Nor, it might be added, can the Social Security Administration by pointing a finger at its computer escape the consequences of failing in its responsibility to provide positive assurance that the aged, blind, and disabled no longer have to subsist on below-poverty-level incomes. *See* S.Rep.No.92–1230, 92d Cong., 2d Sess. 384 (1972).

The basic rationale of *Brown* and *Brower*, *i. e.*, that corrections of computer errors may create new errors that *Goldberg* procedures are meant to correct, is equally applicable to the Clerical Error Exception at issue in this case.

## C. NO CONFLICT EXCEPTION

The defendant's regulations dispense with the requirement of advance notice and an opportunity for a hearing where facts requiring reduction, suspension, or

9. Although in full agreement with Judge Marsh's opinion in *Brown*, Judge Higginbotham, in the *Brower* case, restricted the scope of his order in deference to a court of appeals' stay of the district court's order in *Brown*. 371 F.Supp. at 864 n. 4, 870–71 & n. 16. The *Brown* case was later affirmed without opinion. 492 F.2d 1238 (3d Cir. 1974).

termination are (1) submitted by the recipient, (2) the conclusions from these facts are not subject to conflicting interpretations, and (3) the facts are complete. 20 C.F.R. § 416.1336(a)(3).

As the plaintiffs note, all recipients of SSI are required, under pain of a monetary fine, to report numerous events that may affect their continued eligibility and the amount of their grant. 42 U.S.C. § 1383(e)(2) (1970); 20 C.F.R. § 416.703, 39 Fed.Reg. 28,150 (Aug. 15, 1974). The case of plaintiff Wells who reported, as she was required to do under 20 C.F.R. § 416.703(c), an increase in her Veterans' Administration benefits of $9 per month, illustrates two of the deficiencies in defendants' regulations. The defendant admits an error occurred when plaintiff Wells' SSI benefits were stopped rather than reduced by $9. If this error was due to plaintiff Wells' inaccurate reporting, it demonstrates that the accuracy of information is not assured merely because it is submitted by the recipients. If plaintiff Wells reported her increase accurately, her case demonstrates that the defendant may err in drawing conclusions from the facts that are reported. In neither case is the recipient given the opportunity to correct an error by being notified in advance of a contemplated change in benefits.

The No Conflict Exception differs from *Goldberg* only in that the facts giving rise to termination come from the recipient rather than from some third party. As is illustrated above, this does not mean that facts on which a decision is based are necessarily accurate. *See Elliott v. Weinberger*, 371 F. Supp. 960, 972 n. 39 (D.Haw.1974). Moreover, the *Goldberg* Court stated that due process procedural protections were important to prevent decisions based on misleading factual premises or on *misapplication of rules or policies to the facts of particular cases. Goldberg v. Kelly*, 397 U.S. at 268, 90 S.Ct. 1011. Thus even assuming that the No Conflict Exception reduces the possibility of

factual error by relying on first person reports, there is no procedural safeguard preventing misapplication of the law to the facts. *See Wright v. Finch*, 321 F. Supp. 383 (D.D.C.1971), *vacated as moot sub nom., Richardson v. Wright*, 405 U. S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972).

Defendant relies on the case of *Harrell v. Harder*, 369 F.Supp. 810 (D. Conn.1974), in which a district court upheld AFDC regulations that allowed benefits to be affected without advance notice in first-person-report situations. However, the first-person-report regulation before that court differed critically from defendant's regulation in this case. In *Harrell* the court upheld a regulation that allowed reduction, suspension, or termination of benefits without advance notice on the basis of a first person report where

(1) the recipient indicates in writing that she truly understands that reduction, suspension, or termination must be a consequence of supplying such information; and

. (2) the recipient's statement is not coerced in any way.

369 F.Supp. at 821. In light of this written waiver, the court concluded that in this situation advance notice would serve no purpose.

In an attempt to bring his No Conflict Exception within the holding of *Harrell*, defendant asserts that some advance notice is given and consents are received before benefits are affected. Defendant's Supplemental Memorandum of Points and Authorities in Support of Motion of Defendant to Dismiss or, in the Alternative for Summary Judgment at 6, 10. As pointed out earlier, plaintiffs in this case received no such notice, nor is statutory or regulatory authority given for these assertions, and moreover, they appear to be at odds with the express purpose of his exception—to eliminate the need for giving advance notice.

Defendant also refers to his own regulations, specifically 20 C.F.R. § 416.-1336(b), which states

(b) Where (1) a suspension, reduction or termination action is effectuated, and (2) in accordance with the criteria in paragraph (a)(4) of this section the recipient is not given advance notice of intent to effectuate such action, and (3) the recipient within 30 days following receipt of notice that such action was effectuated requests review of the determination upon which such action is based and presents information indicating that the criteria in paragraph (a)(4) of this section were not met, payments will be reinstated at that time (or restored to the rate before reduction) effective with the month such payments were suspended, reduced, or terminated and will be continued until such time as a reconsidered determination (or, where the issue upon which the initial determination was based is cessation of disability due to medical improvement, a hearing decision) is rendered and notice thereof is transmitted regarding the appeal to the recipient.

Defendant suggested in his Supplemental Memorandum and at oral argument that this provision provides a safeguard similar to the signed statement in *Harrell*. Clearly, it does not. First, while the statement in *Harrell* is signed before benefits are reduced, under defendant's regulation a recipient receives the notice of change of benefits either simultaneously with the change or after it has occurred. Secondly, he must then present information showing that the No Conflict Exception is inapplicable and presumably his benefits will not be restored until he can convince the defendant he has made a mistake—a process which if not impossible, certainly will be time consuming. Therefore, defendant's blithe assertion that his regulation provides for reinstitution of benefits immediately if a recipient protests cannot be accepted. *See* Defendant's Supplemental Memorandum, *supra* at 10.

Defendant also asserts that there is no evidence of willful misuse of the No Conflict Exception. Defendant's Supplemental Memorandum, *supra* at 3. Even if true, the lack of willful misuse is not dispositive. The purpose of *Goldberg v. Kelly* was to protect welfare recipients from erroneous terminations whether intentional or unintentional, not to punish administrators for willful misconduct.

## D. CONCLUSION

Plaintiffs, as eligible SSI recipients, are by definition in need of the SSI benefits that they are entitled to receive. *See* H.R.Rep.No.92–231, 1972 *U.S.Code Cong. & Admin.News,* p. 5012. Thus an erroneous termination or reduction of benefits may, in the words of *Goldberg v. Kelly,* "deprive an eligible recipient of the very means by which to live while he waits." 397 U.S. at 264, 90 S.Ct. at 1018.

▬▬ The Court finds that defendant's Amendment to Federal Law, Clerical Error, and No Conflict Exceptions violate the due process clause as interpreted by *Goldberg* and its progeny. The private interests and governmental interests to be weighed in this case parallel in every significant respect the interests balanced in favor of the welfare recipient in *Goldberg*. In arguing that a full oral evidentiary hearing is unnecessary in the context of his exceptions, defendant evades the more fundamental issue presented by this case, *i. e.,* whether advance written notice and thus some opportunity for a hearing, whatever its form, can be denied when it is demonstrated that SSI benefits may be denied to eligible recipients. The cases teach that such a denial is unfair and violative of due process.

## V. RELIEF

The Court will declare 20 C.F.R. § 416.1336(a)(2), (3) & (4) to be invalid, and defendant will be enjoined from re-

ducing, suspending, or terminating SSI benefits without advance written notice which explains the reasons for any anticipated change in benefits. In light of such relief, the defendant's regulations as currently written will provide for written notice that will allow the recipient 30 days to request review of the defendant's decision without any change in his SSI benefits until the end of that 30 day period or, if review is requested, until at least a reconsideration determination is made. 20 C.F.R. § 416.1336(c). Except as to the requirement of advance written notice, the Court expresses no view as to whether these general procedures may be modified in some of the situations set out in defendant's invalid regulation. The defendant must be allowed a reasonable opportunity to evolve procedures, as long as they are consistent with due process, to meet needs as they arise. *Richardson v. Wright*, 405 U.S. 208, 209, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972); *see Fusari v. Steinberg*, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975).

■ In addition to the declaratory and injunctive relief outlined above, the Court has determined that those members of plaintiffs' class who have had their benefits reduced or suspended pursuant to defendant's constitutionally defective regulation without advance, simultaneous, or subsequent written notice have a right to have the reasons for such prior reduction or suspension explained to them. They must also be informed of the procedures by which they can contest a determination which they believe to be erroneous. The Court recognizes that it is the defendant who must bear the burden of remedying his own constitutional violations, but also realizes the difficulty of identifying specifically the members of plaintiffs' class who remain unaware of why their SSI benefits have been reduced or suspended. The Court will, therefore, order defendant to prepare a notice to be sent to all recipients of SSI benefits informing them of their right

to have explained in writing the reasons for any previous reduction or suspension of SSI benefits, and how they can obtain this written explanation. This notice must also inform them of what procedures to follow if they wish to contest the previous determination once it has been explained to them. The Court will allow the defendant 30 days to prepare this notice, and the plaintiffs will be given 30 days thereafter to file any objections to the proposed notice. After Court approval, the notice can be sent in a subsequent mailing to all SSI recipients.

In light of the foregoing, it is this 26th day of August, 1975,

Ordered that this case be maintained as a class action and that the class consist of all recipients of Supplemental Security Income benefits who have had their benefits reduced or suspended without advance written notice pursuant to 20 C.F.R. § 416.1336(a)(2), (3), or (4); and it is

Further ordered that plaintiffs' motion for summary judgment be and the same is hereby granted; and it is

Further ordered that defendant's motion for summary judgment be and the same is hereby denied; and it is

Further ordered and declared that 20 C.F.R. § 416.1336(a)(2), (3) & (4) violates due process by denying advance written notice which. explains the reasons for reducing, suspending, or terminating Supplemental Security Income benefits, and defendant is hereby enjoined from reducing, suspending, or terminating Supplemental Security Income benefits without adequate advance written notice of the fact and reasons for such change; and it is

Further ordered that defendant prepare a notice to be sent to all SSI recipients informing them of their right to written reasons for any previous reduction or suspension of SSI benefits and the procedures by which they might contest any such determination. A copy of such proposed notice shall be filed with the Court and served on counsel for the plaintiffs within 30 days of the date of

this Order. If plaintiffs' counsel has any objections to defendant's proposed notice, such objections shall be filed with the Court and served on counsel for the defendant within 30 days after service of the proposed notice on plaintiffs' counsel. The Court will retain jurisdiction over this matter until defendant's proposed notice has been approved by the Court.