Cynthia HAGANS, for herself and her two infant children, Kimberly and Korey, et al., Plaintiffs-Appellees,

Frances Van Buren, for herself and her two infant children, et al., Intervenors-Appellees,

v.

Stephen BERGER, as Commissioner of the New York State Department of Social Services, Defendant-Appellant.

No. 971, Docket 76–7101.

United States Court of Appeals, Second Circuit.

Argued April 7, 1976.

Decided June 2, 1976.

Carl J. Nathanson, Nassau County Law Services Committee, Inc., Hempstead, N.Y., for plaintiffs-appellees and intervenors-appellees.

Jesse J. Fine, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for defendant-appellant.

Before FRIENDLY, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

On February 10, 1972, the plaintiffs, on behalf of themselves and their infant children and as representatives of those who are recipients of public assistance in the State of New York under the cooperative federal-state Aid to Families with Dependent Children Program (AFDC) (42 U.S.C. § 601 et seq.), commenced this action in the United States District Court for the Eastern District of New York against George K. Wyman, then Commissioner of the New York State Department of Social Services (the State). The complaint sought declaratory and injunctive relief in an action challenging the constitutionality under the equal protection clause of what is now § 352.7(g)(7) of Title 18 of the New York Code of Rules and Regulations (the Regulation), which permits the State to make advance allowances of rent to prevent the eviction of recipient families and to recoup them from subsequent grants and allowances. The complaint also urged that the State Regulation was contrary to the provisions of the Social Security Act governing AFDC (42 U.S.C. §§ 602(a)(7), (10)) (the Act), as well as the regulations of the Department of Health, Education and Welfare (HEW) promulgated thereunder (45 C.F.R.

§ 233.20(a)). The protracted and tortuous history of this litigation is found in a chronological reading of our opinions in 462 F.2d 928 (2d Cir. 1972) and 471 F.2d 347 (2d Cir. 1973), the Supreme Court opinion in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and finally our opinion remanding the matter once again to the district court, 527 F.2d 1151 (2d Cir. 1975). We see no need to repeat that narration. Chief Judge Mishler for the fourth time has held that the Regulation is contrary both to the Act and the HEW regulation. The judgment of the district court of February 26, 1976 granted the plaintiffs' motion for leave to intervene twenty-four additional named plaintiffs who are AFDC recipients under the Regulation in its amended form. The Regulation was declared void and its enforcement and implementation were enjoined. No opinion was written, and a stay was granted pending this appeal. Chief Judge Mishler's previous opinion is set forth in 399 F.Supp. 421 (E.D.N.Y.1975). The defendant has appealed. We reverse and remand for the convocation of a three-judge court on the constitutional issues involved. See 415 U.S. at 544, 94 S.Ct. 1372.

I

The AFDC program was established by the Social Security Act of 1935. It is financed largely by the federal government on a matching fund basis and is administered by the states which elect to participate. Those states are required to submit an AFDC plan for the approval of the Secretary of HEW. *King v. Smith,* 392 U.S. 309, 316–17, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In determining what AFDC benefits will be paid, the states must establish a "standard of need," which determines who is eligible for public assistance, and then must determine a "level of benefits," that is, a percentage or maximum dollar amount of such needs which will be paid. The states are given a "great deal of discretion" in determining both of these criteria, *Rosado v. Wyman,* 397 U.S. 397, 408, 90 S.Ct. 1207, 25 L.Ed.2d 142 (1970). New York

State is one of only fourteen states which have set the level of benefits at 100% of the established standard of need, and in 1974 increased the standard of need by 11%. *Baumes v. Lavine,* 38 N.Y.2d 296, 379 N.Y. S.2d 760, 765, 767 (1975). General supervision of the New York AFDC program is the responsibility of the Department of Social Services, with day-to-day administration performed by local or county agencies. Section 131–a(2) of the New York Social Services Law enumerates the items to be included in determining the standard of need; in addition to monthly sums determined by family size, allowances for shelter are also provided.

As this litigation establishes, innumerable recipients diverted shelter allowances to other purposes and became delinquent in rental payments. Evictions ensued and placement of AFDC recipients in so-called "welfare hotels" in metropolitan areas became necessary. In an effort to prevent this dislocation to generally unsuitable environs, the New York State Department of Social Services provided for the making of an "advance allowance" to recipients to prevent eviction. The applicable Regulation is 18 N.Y.C.R.R. § 352.7(g)(7) which provides:

> For a recipient of public assistance who is being evicted for nonpayment of rent for which a grant has been previously issued, an advance allowance may be provided upon request to prevent eviction or to rehouse the family. Such an allowance may be provided only where the recipient has made a request in writing for such an allowance, and has also requested in writing that his grant be reduced in equal amounts over the next six months to repay the amount of the advance allowance. When there is a rent advance for more than one month, or more than one rent advance in a 12-month period, subsequent grants for rent

shall be provided as restricted payments in accordance with Part 381 of this Title.

The plaintiffs below urged, and the district court has held, that the recoupment provision of the Regulation contravenes the intention and the language of the AFDC program as stated in the Act, 42 U.S.C. § 601 et seq., and the regulations promulgated thereunder, 45 C.F.R. § 233.20(a). The judgment below declared the Regulation to be "null, void and of no effect."

## II

Since the purpose of the Act is to encourage "the care of dependent children in their own homes or in the homes of relatives" and "to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection," 42 U.S.C. § 601, it is difficult to understand how the Regulation is offensive to the intent or spirit of the Act. It was promulgated to prevent evictions and relocation to other presumably less desirable quarters. *Hagans v. Lavine, supra,* 462 F.2d at 930. In his dissenting opinion in *Hagans v. Lavine, supra,* 415 U.S. at 562, 94 S.Ct. at 1391. Mr. Justice Rehnquist, joined by the Chief Justice and Mr. Justice Powell, commented: "It would seem extraordinary if, having paid petitioners more than their normal monthly entitlement in order to meet an emergency situation, the State had not sought to recoup the payments over a period of time."

The appellees note that 42 U.S.C. § 602(a)(7)[1] requires that a State AFDC plan, in determining need, must take into consideration any other income and resources of any child or relative claiming aid,

---

1. "A State plan for aid and services to needy families with children must . . . (7) . . provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent chil-

dren, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any ex-

and that § 602(a)(10) [2] mandates that aid to AFDC families be furnished with reasonable promptness to all eligible individuals. We fail to see how the Regulation is offensive to either provision of the Act. Section 602 sets forth, *inter alia,* the criteria governing the determination of eligibility. All of the plaintiffs have obviously been found eligible and are receiving benefits. They are not only receiving them promptly, but in advance of the usual payment date.

The argument made under subdivision 7 seems to be that in determining need, the State can only consider additional sources of income or resources actually available to the recipient and that where there are no such funds during the period of recoupment, there is pro tanto a failure to meet the current needs of the recipient with the aid which subdivision 10 mandates shall be furnished promptly to all eligible individuals. But this argument is not persuasive. Here there is no overall reduction of the total amount received by the AFDC beneficiaries, nor is the State calculating an applicant's need based upon questionable presumptions as to available resources. See *King v. Smith, supra; Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975). There is simply an expedition of payment to accomplish a beneficial purpose perfectly consonant with the philosophy of the Act. A comparable argument was rejected in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The Court there was concerned with a Maryland regulation which imposed an upper limit on AFDC payments of $250 per family in certain counties and $240 elsewhere in the State. Plaintiffs there, as here, argued that the State regulation was contrary to 42 U.S.C. § 602(a)(10) in that it denied benefits to dependent eligible younger children of large families. Mr. Justice Stewart's opinion for the Court upholding the regulation noted:

> The appellees rely most heavily upon the statutory requirement that aid "shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10) (1964 ed., Supp. IV). But since the statute leaves the level of benefits within the judgment of the State, this language cannot mean that the "aid" furnished must equal the total of each individual's standard of need in every family group. Indeed the appellees do not deny that a scheme of proportional reductions for all families could be used that would result in no individual's receiving aid equal to his standard of need. As we have noted, the practical effect of the Maryland regulation is that all children, even in very large families, do receive some aid. We find nothing in 42 U.S.C. § 602(a)(10) (1964 ed., Supp. IV) that requires more than this. So long as some aid is provided to all eligible families and all eligible children, the statute itself is not violated.

397 U.S. at 480–81, 90 S.Ct. at 1159. (footnote omitted). In his opinion Mr. Justice Stewart also noted that there was considerable support in the legislative history for the State's view that the statutory provision (42 U.S.C. § 602(a)(10)) was designed only to prevent the use of waiting lists. Id. at 481 n. 12, 90 S.Ct. 1153. The same section was construed in *Jefferson v. Hackney,* 406 U.S. 535, 545, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) where Mr. Justice Rehnquist observed in his opinion for the Court:

> That section was enacted at a time when persons whom the State had determined to be eligible for the payment of benefits were placed on waiting lists, because of the shortage of state funds. The statute was intended to prevent the States from denying benefits, even temporarily, to a

penses reasonably attributable to the earning of any such income. . . ."

**2.** "A State plan for aid and services to needy families with children must . . . (10) provide, effective July 1, 1951, that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and that aid to families with dependent children shall . . . be furnished with reasonable promptness to all eligible individuals. . . ."

person who has been found fully qualified for aid. See H.R.Rep. No. 1300, 81st Cong., 1st Sess., 48, 148 (1949); 95 Cong. Rec. 13934 (remarks of Rep. Forand). Section 402(a)(10) also prohibits a State from creating certain exceptions to standards specifically enunciated in the federal Act. See, e. g., *Townsend v. Swank,* 404 U.S. 282, [92 S.Ct. 502, 30 L.Ed.2d 448] (1971). It does not, however, enact by implication a generalized federal criterion to which States must adhere in their computation of standards of need, income, and benefits. Such an interpretation would be an intrusion into an area in which Congress has given the States broad discretion, and we cannot accept appellants' invitation to change this long-standing statutory scheme simply for policy consideration reasons of which we are not the arbiter.

(footnote omitted).

■ We see nothing therefore in the Act which prohibits expressly or by implication the procedure of advances and recoupment provided by the Regulation. On the contrary, as the Supreme Court cases to which we have referred indicate, the State has broad latitude in setting the standard of need and the level of benefit. A fortiori the timing of the payment of that allowance, which is made at the recipient's written request and contains his consent to repayment, should not be beyond the power of the State. There is nothing in the Act to preclude it.[3]

### III

■ The appellees also rely on three-judge district court cases in other circuits which have found state recoupment regulations void, either as a deprivation of benefits to an eligible child in violation of § 602(a)(10), or as being contrary to the spirit and intent of the Act. *Cooper v. Laupheimer,* 316 F.Supp. 264 (E.D.Pa.1970); *Bradford v. Juras,* 331 F.Supp. 167 (D.Ore. 1971). These cases involved overpayments due to fraud or mistake and subsequent recoupment under the state regulations there involved. We need express no opinion as to the soundness of these opinions but only point out that they are distinguishable from the case at bar. Both cases stressed that the child should not be penalized for the misconduct or mistake of a parent and that the reduction in benefits by recoupment precluded the child from receiving the allowance fixed by the state.[4] Of course, it does not follow that a child necessarily benefits by an overpayment to a parent, but a child whose parental abode has been preserved by an advance allowance to prevent eviction has undoubtedly been benefited. Moreover, the payment advanced here was not unintentional; it was a deliberate decision made by the State and the parent to achieve an end perfectly consistent with the intent of the Act.

More pointedly, the Regulation in issue here has already been litigated in the courts of New York State with varying results. The Appellate Division, Third Department

---

. **3.** Appellees rely on *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), which we find to be inapposite. There the Court struck down an Alabama state regulation which denied AFDC benefits to the children of a mother who cohabited with any single or married able-bodied man (the so-called "substitute father" regulation). The Act (42 U.S.C. § 606(a)) defined a dependent child as one whose "parent" was continually absent from the home. The Court held that Congress intended the term "parent" to include only those persons who had a legal duty to support the child. A comparable California regulation which would reduce payments to a child living with his mother and a non-adopting stepfather or a man assuming the role of a spouse, was invalidated on similar reasoning in *Lewis v.*

*Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). These cases involve state regulations which were in conflict with what the Court construed the Congress to mean when the term "parent" was inserted in the Act. We see no conflict here between the Act and the Regulation. There is no denial or reduction of benefits, but rather an acceleration of payment.

**4.** We note that 45 C.F.R. § 233.-20(a)(12)(i)(A)(2) (see Part IV of this opinion, *infra*) permits involuntary recoupment where there has been a willful withholding of information by a recipient resulting in an overpayment even though no additional funds are available. To that extent, of course, the sin of the parent is visited upon the child.

in *Adkin v. Berger,* 50 A.D.2d 459, 378 N.Y.S.2d 135 (1976) held that the Regulation was neither mandated by nor in conflict with other federal and state laws and was "an effective means whereby petitioners and other similarly situated can allocate a greater proportion of their public assistance grants to the times when they are in greater need and yet, because of the subsequent recovery of the advances, receive no more than their proportionate share of the limited assistance funds available. As such, the program plainly provides a beneficial service in a reasonable manner, and it should be sustained." 378 N.Y.S.2d at 137.

Seemingly to the contrary is the memorandum decision of the Appellate Division, Second Department in *Dunn v. Bates,* 50 A.D.2d 561, 374 N.Y.S.2d 677 (1975). That court found the Regulation invalid as written because it failed to limit the recoupment so as to avoid undue hardship. However, a refund was not directed there by reason of the petitioner's failure to exhaust administrative remedies. The Appellate Division, First Department, in a per curiam opinion, *Reyes v. Dumpson,* App.Div., 381 N.Y.S.2d 58 (1976) found the Regulation invalid and arbitrary because it lacked the protective provisions contained in 18 N.Y.C. R.R. § 352.31(d)(4).[5] The latter regulation limits recoupment on a case-by-case basis, so as not to cause undue hardship, where there has been a willful withholding of information as to current resources. The court permitted recoupment, however, limited to 15% of the petitioner's current assistance grant, and thought *Dunn* to accord with this result.

We are thus confronted with a situation where one department is enforcing the Regulation as written and two are enforcing it subject to the limitations set forth in § 352.-31(d).[6] The latter section has not been cited or argued to us on the argument of this appeal. However, it apparently was the position of the State below that it was applicable and was called to the attention of the court (399 F.Supp. at 425 n.6) which found it irrelevant to the "basic invalidity" of the Regulation. The matter has apparently not yet been litigated in the New York Court of Appeals and, in any event, we would not be bound by a state court's determination that a state regulation was or was not in conflict with the Act. The fact remains, however, that the recoupment procedure for rent advances is being enforced in the state courts subject to the limitations on the rate of recoupment which are not in issue here.

It is conceded by the parties here (and indeed there can be no dispute) that the advance allowance procedure provided by the Regulation is not mandated by the Act and is in fact a voluntary measure adopted to meet the needs of the recipients. The State does not reimburse any local or county welfare department for the duplication of any grant or allowance for any period. N.Y. Social Services Law § 153(8). Should the Regulation be voided and recoupment be denied, it is not unreasonable to anticipate that the advancement procedure will

---

5. "The proportion of the current assistance grant that may be deducted for recoupment purposes shall be limited on a case-by-case basis so as not to cause undue hardship, and in no case shall exceed 10 percent of the household needs, and shall continue until such time as the excess payments have been recovered, except that where two or more recoupments are made simultaneously for different reasons or arising from different circumstances, the total reduction in the assistance grant shall not exceed 15 percent of the household's needs. In the event the amount required to be reduced hereby is greater than the amount of the current grant payments, such payments shall be withheld until the amount of the excess grants has been recouped."

6. In *Alexander v. Berger,* 383 N.Y.S.2d 979 (Sup.Ct. Suffolk Co. 1976), Justice Scileppi, sitting in the Second Department, enforced the recoupment of a rental allowance despite *Dunn v. Bates, supra.* He found that in *Reyes v. Dumpson, supra,* the First Department had given a rational interpretation to *Dunn* by permitting recoupment subject to the limitations of 18 N.Y.C.R.R. § 352.31(d). At the same time, the former Court of Appeals Judge expressed his strong preference for the views of the Third Department in *Adkin v. Berger, supra.*

be discarded. The State made such a representation on the argument of this appeal. Eviction and relocation would then seem to be the only alternative, which would hardly appear to be in the interest of the plaintiff class here.

■■■ Appellees argue that the Act does provide assistance for emergency needs in the event of a crisis. 42 U.S.C. § 606(e). New York has included the emergency assistance provisions in its plan. N.Y. Social Services Law § 350–j. We note, however, that in interpreting its own law in *Baumes v. Lavine, supra,* 38 N.Y.2d 296, 379 N.Y. S.2d 760, at 766–67, the Court of Appeals construed it to apply to "sudden and unexplained emergency events" and "not to remedy the anticipated demands created as the result of everyday life." Although failure to pay rent inevitably and naturally leads to eviction, it has been held that advances made to pay regular monthly rent and utility bills are not non-recoverable emergency payments within section 350–j of the Social Services Law, *Adkin v. Berger, supra.* While it is true that a state's definition of an emergency may not be more restrictive than that provided by the Act, *Mandley v. Trainor,* 523 F.2d 415 (7th Cir. 1975), we do not view the emergency assistance provisions of § 406(e) of the Act as requiring a state participating in the program, to provide delinquent rent for the recipient's present abode in lieu of relocation to some other shelter such as a 'welfare hotel.' Furthermore, the State is not mandated to remain in the emergency assistance program should it consider the required emergency allotments to be excessive, and emergency assistance cannot be provided by the terms of the Act "in excess of 30 days in any 12-month period." 42 U.S.C. § 606(e)(1). As a result, we cannot escape the possibility that invalidation of § 352.7(g)(7) might leave recipients with no alternatives to eviction.

## IV

■■ Appellees further maintain that the Regulation is contrary to 45 C.F.R. § 233.-20(a)(12)(i)(A) which provides as follows:

The State may not recoup any overpayment previously made to a recipient:

(1) Unless the recipient has income or resources exclusive of the current assistance payment currently available in the amount by which the agency proposes to reduce payments: except that,

(2) Where such overpayments were occasioned or caused by the recipient's willful withholding of information concerning his income, resources or other circumstances which may affect the amount of payment, the State may recoup prior overpayments from current assistance grants irrespective of current income or resources.

Our previous remand, 527 F.2d at 1153–54, was predicated upon the State having then taken the position that the overpayment regulations were applicable. The State has now argued, however, that no overpayment is involved. We agree. 45 C.F.R. § 205.40(a)(4) defines an overpayment as a financial assistance payment "in excess by at least $5.00 of the amount that *should* have been paid, to such assistance unit under permissible State practice" (emphasis added). Since the State Regulation here authorizes the advance allowance, it cannot be properly characterized as an excess over the amount that *"should"* have been paid. "Overpayment" would seemingly connote a payment which was unintentionally made either through a mistake by the agency or through the mistake or fraud of the recipient.[7] While the payments made here are in excess of the regular monthly grant, they were of course intentionally advanced at the written request of the recipient.

■■ We conclude therefore that the challenged Regulation is not violative of either

---

7. Agency error is not uncommon. See *National Welfare Rights Organization v. Weinberger,* 377 F.Supp. 861, 865 n.2 (D.D.C.1974), citing a 1973 HEW analysis which established that 45.7% of all errors are made by the agency, and a 1972 New York State Department of Social Services Audit Report indicating that 56.9% of all AFDC overpayments were the result of agency error.

the Act or HEW regulations. We think moreover that it represents a sensible response in this State where housing for the indigent presents a continuing and vexing problem. The resources of the State and the federal government are properly husbanded and utilized to maintain the family unit and to avoid the trauma of eviction and relocation. The possible alternatives, as we have observed, are of doubtful viability and in any event of limited value.

We therefore reverse the judgment below and remand for the convocation of a three-judge court to determine the constitutional issues involved, pursuant to the remand of the Supreme Court.