Ramon **GUTIERREZ** et al., Plaintiffs,

v.

**Earl L. BUTZ et al., Defendants.**

**Civ. A. No. 74–1252.**

United States District Court,
District of Columbia.

June 30, 1976.

828

Robert S. Catz, Antioch School of Law, Washington, D. C., Burton D. Fretz, California Rural Legal Assistance, Santa Maria, Cal., Howard S. Scher, Migrant Legal Action Program, Washington, D. C., Richard Skutt, Michigan Migrant Legal Assistance Project, Wayne State University School of Law, Detroit, Mich., John R. Kramer, Georgetown Law Center, Washington, D. C., Marvin H. Feingold, Ohio Migrant Legal Action Program, Bowling Green, Ohio, Ness Flores, United Migrant Opportunity Services, Inc., Milwaukee, Wis., Joseph Segor, Migrant Services Foundation, Miami, Fla., A. Gridley Hall, David J. Lillesand, Camden Regional Legal Services, Bridgeton, N. J., Vincent J. Carroll, Migrant Legal Reform and Rural Development Project, Indianapolis, Ind., for plaintiffs.

Earl J. Silbert, U. S. Atty., Ellen Lee Park, Peter C. Schaumber, Asst. U. S. Attys., Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge:

This proceeding presents a challenge to a certain Regulation [1] and Instruction [2] to the States adopted by the Secretary of Agriculture relating to the administration and implementation of the Food Stamp Program which is carried out under the authority of the Food Stamp Act.[3] The Regulation and Instruction in question relate to the procedures prescribed by the Department of Agriculture for the determination of income of households of seasonal farm laborers applying to participate in the Food Stamp Program. The plaintiffs are adult migrant farm workers and several migrant farm laborer organizations concerned with the advancement and protection of the interest of such workers. The defendants are the Secretary of Agriculture and certain officials in the Department responsible for administering the Food Stamp Program.

The core of the controversy is a Regulation issued by the Secretary which provides:

> Monthly income means all income which is received or *anticipated to be received* during the month. 7 C.F.R. § 271.3(c)(1) (emphasis added).[4]

Plaintiffs challenge the Regulation on the theory that the "determination of eligibility and the setting of food stamp purchase levels for farmworker households according to anticipated income rather than income actually available contravenes the statutory mandates of the Food Stamp Act." [5]

---

1. 7 C.F.R. § 271.3(c)(1).

2. FNS Instruction No. 2326.1, *The Food Stamp Certification Handbook*, (August 5, 1974) ("Handbook").

3. 7 U.S.C. §§ 2011–2026.

4. Instruction 2326.1, *supra* n. 2, applies the anticipated income concept specifically to migrant farm laborers.

5. Complaint, at ¶ XXI.

## The Statutory and Regulatory Scheme

A brief analysis of the statutory and regulatory scheme is relevant and instructive.

The Food Stamp Program was initially established in 1964 and has since been amended. In adopting the Food Stamp Act the Congress announced:

> It is hereby declared to be the policy of Congress, in order to promote the general welfare, that the Nation's abundance of food should be utilized cooperatively . . . to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. . . . 7 U.S.C. § 2011.

Under the Act, the Secretary of Agriculture is authorized to develop and administer a program under which, upon the request of a State agency, eligible households within a State are provided "an opportunity to obtain a nutritionally adequate diet through the issuance to them of a coupon allotment" having a greater monetary value than the charge paid for such allotment by an eligible household. § 2013(a). The Secretary is authorized to promulgate regulations for the administration of the program, consistent with the provisions and purposes of the Act. § 2013(c).

Participation in the program is limited to "households whose income and other financial resources are determined to be substantial limiting factors in permitting them to purchase a nutritionally adequate diet." § 2014(a). Under § 2014(b) the Secretary establishes uniform national standards of participation eligibility by households in the program which at a minimum must prescribe the amounts of household income and other financial resources, including both liquid and nonliquid assets, to be used as criteria of eligibility. State plans must meet the standards of eligibility established by the Secretary. And pursuant to § 2019(b), the certification[6] of applicant households and the issuance to them of food coupons is the responsibility of the State agency.

6. Certification is the process of determining eligibility and the level of assistance to be pro-

## Procedural History

Shortly after this proceeding was filed, the defendants moved to dismiss, attacking the plaintiffs' theory and concept of income. Defendants contended that income determination is necessary to ascertain eligibility and that the Regulation and Instruction which require state agencies to use anticipated income rather than income actually available is consistent with the statute. Defendants relied on economic treatises for the proposition that "income" means assets which will become available in the future and that the phrase "income available in fact" is meaningless.

In response, plaintiffs moved for partial summary judgment and opposed defendants' motion to dismiss. Specifically, plaintiffs argued that allowing each state to estimate future income for farmworkers results in non-uniform national standards of eligibility, contrary to the requirement of 7 U.S.C. § 2014(b) that standards of eligibility be uniform across the country. Examples of the differing methods used by states to project the future income of migrant farmworkers were documented to show that some destitute families were being denied participation in the Food Stamp Program.

Both the motion to dismiss and the motion for partial summary judgment were denied after oral argument and discovery was ordered to proceed.

## Current Motions

Defendants then filed their pending motion for summary judgment and plaintiffs followed with a cross-motion for summary judgment. The Court has considered the memoranda of points and authorities filed by counsel, and the entire record, and concludes that plaintiffs' cross-motion for summary judgment should be granted and defendants' motion for summary judgment should be denied.

Defendants argue that the present Regulations and procedures sufficiently account for the special problems of migrant labor-

vided. Instruction 2010, Handbook, *supra* n. 2.

ers, for instance, by providing that the eligible worker may have food stamps furnished free of charge for the period of time when the worker enters an area and has not yet secured remunerative employment. Instruction No. 2326.1, *The Food Stamp Certification Handbook* (August 5, 1974) ("Handbook"). Certification periods of two weeks are available for families who anticipate income during the month but not before the first two weeks of the month. Instruction 2312.4, Handbook. A migrant family which had been receiving food stamps in another jurisdiction may continue participation at a new location for sixty days without a new certification. 7 U.S.C. § 2019(c).[7] Finally, defendants rely on the provision for a hearing and restoration of benefits due to any misapplication of the above-cited protections as an adequate remedy for the abuses described in plaintiffs' papers.[8]

Plaintiffs, on the other hand, stress that the policy of anticipating monthly income in the certification process is inconsistent with the purpose of the Food Stamp Act to provide needy families with the opportunity to obtain a nutritionally adequate diet. 7 U.S.C. § 2013(a). Farmworker households who are destitute at the commencement of the work season have no income available from past employment, but are denied food stamps or required to pay an unrealistically high amount for stamps during the initial one to four week period in which income is anticipated but not yet received.

Plaintiffs emphasize in their motion the narrow and limited nature of their challenge to the regulations. The use of the anticipated income method is not questioned as to families with a stable predictable income, but rather as applied to migrant workers who are without funds when they arrive in an area but anticipate earning income in the future. Also, plaintiffs point

out that they are not challenging the accuracy of methods used to determine future income, but question the validity of a policy which accurately predicts that a family will receive a certain amount of income at a certain date, but allows the family to go hungry for the one to three week interval between certification and the actual receipt of the anticipated income. They are also willing to have their available resources verified to show that they are indeed eligible to receive the stamps.

The Court concludes that the Regulations and Instructions cited by the government are an inadequate and feeble response to the problems of migrant workers. The provision for emergency issuance of food stamps,[9] is entirely discretionary and fails to guarantee that migrant families will be provided the opportunity guaranteed them by the Food Stamp Act of attaining a nutritionally adequate diet. The 60 day carry-over procedure [10] is likewise an unacceptable solution since it is based on whatever income the family had been receiving before migration, which may be totally unrelated to the income actually available to them after migration and before the first paycheck. As to the provision for half-month certification,[11] the Court notes that this too is discretionary, and that even a 13–14 day period of hunger would contravene the clear and unmistakable purposes of the Food Stamp Act.

■ The legislative history of the Food Stamp Act, including the amendments passed in 1971, leaves no doubt that Congress intended to assure that all needy families would be able to obtain a nutritionally adequate diet, regardless of administrative difficulties in implementing this objective. Judge J. Skelly Wright of our Court of Appeals recently discussed this Congressional mandate in *Rodway v. United States*

7. Implemented by 7 C.F.R. 271.4(a)(5) and Instructions 2420–2427, Handbook.

8. 7 C.F.R. § 271.1(*o*); *Bermudez v. U. S. Department of Agriculture*, 348 F.Supp. 1279 (D.D.C.1972), *aff'd* 160 U.S.App.D.C. 150, 490 F.2d 718 (D.C. Cir.), *cert. denied* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973).

9. Handbook, *supra* n. 2, Instruction 2326.1.

10. *Id.*, Instructions 2420–2427.

11. *Id.*, Instruction 2312.4.

*Department of Agriculture*, 168 U.S.App. D.C. 387, 514 F.2d 809 (1975). Speaking for that Court he noted that Congress had amended the Act in 1971, dropping the qualifying phrase "more nearly" from the promise to provide an "opportunity to obtain a nutritionally adequate diet." *Id.*, 514 F.2d at 819.

He further noted that

the 1971 amendments marked a major shift in the policy of the Food Stamp Act, a shift from supplementing the diets of low-income households to *guaranteeing* those households the opportunity for an adequate diet. Congress plainly intended the 1971 amendments to assure that no eligible family need go malnourished; the Government would provide all the opportunity to be healthfully fed.

*Id.*, 514 F.2d at 820 (emphasis in the original).

The use of defendants' concept of anticipated income rather than income presently available to determine eligibility has resulted in the denial to some migrant families their statutory right to obtain a nutritionally adequate diet. Although there are no cases interpreting the meaning of "income" under the Food Stamp Act, plaintiffs' position is supported by several analogous cases dealing with welfare. The following decisions struck down regulations imputing income to needy families that was not actually available to them: *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970) (invalidated California law which presumed availability of income from "man in the house" who was not the actual or adoptive father of children in the household); *Barron v. Bellairs*, 496 F.2d 1187 (5th Cir. 1974) (past income for 6 months may not be averaged to determine eligibility for welfare if current income is unstable); *National Welfare Rights Organization v. Weinberger*, 377 F.Supp. 861 (D.D.C.1974) (invalidating recoupment of overpayment of

welfare from current payments because such a practice presumes the income is still available to the recipient although in fact it may not). Similarly, income which is not immediately available should not be imputed to applicants for Food Stamps.

The Department's resistance to the plaintiffs' challenge appears to be based in large part upon an undue concern for administrative convenience. They allege that food stamps, like any other form of social welfare, need not be distributed with mathematical certainty.[12] Defendants further state that state agencies would not have sufficient time to adequately verify migrant workers' eligibility in order to provide the type of immediate "stop-gap" assistance sought by plaintiffs. Day-to-day changes in the employment situation of some migrants might result in burdensome trips to the Food Stamp Office to verify income.

■ This description of the implications of plaintiffs' remedy is exaggerated at best. As noted above, the issue of anticipated income versus income in fact affects a small portion of food stamp recipients, i. e., those who have little or no income for a short period of time upon moving into an area where seasonal work is available. Furthermore, the Congressional guarantee of a nutritionally adequate diet does not provide an exception for bureaucratic difficulties.

Defendants also argue that the regulations and instructions are subject to limited judicial review for abuse of discretion or arbitrariness, based entirely on the official "Statement of Reasons" which accompanied the summary judgment motion.[13]

■ The *Rodway* court *supra*, 514 F.2d at 816 condemned such post-hoc litigation affidavits prepared by agencies to justify past actions. Nonetheless, the Court has examined the "Statement of Reasons" and finds that it does not adequately justify the clear undermining of the statutory purpose which

**12.** *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), upheld welfare regulation which imposed a maximum on monthly benefits to families, regardless of family size. That case, however, did not involve a statutory mandate guaranteeing adequate benefits, and thus its rationale is not applicable here.

**13.** *See, e. g., Wellford v. Ruckelshaus*, 142 U.S. App.D.C. 88, 439 F.2d 598 (1971).

is presented by the application of the Regulation and Instruction to the situation of migrant workers, as outlined by plaintiffs in their pleadings and affidavits.

On basis of the foregoing, the Court enters the following:

## ORDER AND JUDGMENT

Plaintiffs and defendants have filed cross-motions for summary judgment concerning the validity of a Regulation and Instruction promulgated by defendants under the authority of the Food Stamp Act, 7 U.S.C. § 2013(c). Having considered fully the said motions, pleadings, affidavits, and memoranda, the Court for the reasons set forth in the Memorandum Opinion filed this date, determines that there is no material issue of fact in dispute, and expressly directs the entry of a judgment in favor of plaintiffs as follows:

## I. DECLARATORY RELIEF

Declared:

1. That the defendants acted outside the scope of their authority under the Food Stamp Act, 7 U.S.C. § 2013(c), in promulgating the Regulation at 7 C.F.R. § 271.-3(c)(1) and FNS Instruction 732–1, § 2326.1, inasmuch as they are contrary to the mandate of the Food Stamp Act as set forth at 7 U.S.C. §§ 2011 and 2013(a) as applied to households which are destitute of income and resources at the time of application for food stamp assistance.

2. That the Regulation at 7 C.F.R. § 271.3(c)(1) and FNS Instruction 732–1, § 2326.1 to the extent that they apply the concept of anticipated income to the households described in ¶ 1, *supra*, are void and without effect.

## II. INJUNCTIVE RELIEF

ORDERED, ADJUDGED and DECREED that defendants are hereby enjoined and restrained from:

1. Following the above voided policy contained in the Regulation at 7 C.F.R. § 271.3(c)(1) and FNS Instruction 732–1, § 2326.1.

2. Refusing to provide Food Stamp assistance on the basis of income actually available rather than anticipated income.

The defendants shall take the necessary and immediate steps to implement this Order, including but not limited to revoking the voided portion of the Regulation at 7 C.F.R. § 271.3(c)(1) and FNS Instruction 732–1, § 2326.1, and promulgating in its stead an appropriate Regulation and/or Instruction and shall present to the Court a proposed Regulation and/or Instruction within 30 days hereafter, to be filed with the Clerk of the Court and served on counsel for plaintiffs.

Plaintiffs shall file with the Clerk of the Court and serve on counsel for defendants their comments, if any, on the defendants' proposal within 20 days thereafter.

The Court will retain jurisdiction over this case during said implementation.