**Adrienne CAULK on behalf of herself and as guardian ad litem for Alicia Caulk and Anecha Caulk, et al., and Delaware County Welfare Rights Organization**

v.

**Frank BEAL et al.**

**Civ. A. No. 77-2932.**

United States District Court, E. D. Pennsylvania.

Sept. 28, 1977.

---

Richard S. Packel, Chester, Pa. (Dela County Legal Assistance), Jonathan M. Stein, Community Legal Services, Philadelphia, Pa. (co-counsel), Brenda Gibbs Moore, Richard Skutt, Washington, D. C., for plaintiffs.

Stanley Slipakoff, Asst. Atty. Gen., Philadelphia, Pa., Linda M. Gunn, Dept. of Public Welfare, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action arises in the aftermath of the Pennsylvania legislature's budgetary crisis of August 1977. Due to the failure of the legislature to pass a budget and thereby supply the funds necessary to support public assistance checks, such checks were not issued from August 5 to August 21, 1977. Public assistance checks normally are issued twice a month and thus it was the first check of the month that was withheld. For many food stamp recipients, public assistance funds are the sole means by which they purchase food stamps; recognizing the problem that faced many food stamp participants by the withholding of the public assistance checks, the Department of Public Welfare established a program whereby public assistance recipients would be allowed their food stamp allotments on credit. These recipients were informed that they could receive their food stamps with no current payment, provided that they sign a form authorizing the Department to deduct from a future assistance check the amount that they ordinarily would have paid for food stamps during this period. Recipients electing to participate in this program signed such forms and did receive such food stamps on credit. After the budget was passed on August 20th, the Department issued both the first and second public assistance checks for the month of August; the second check, in many instances, was re-duced by the food stamp credit. Plaintiffs, public assistance recipients, now move for a preliminary injunction against the defendants enjoining them from reducing public assistance checks in this manner in the future and further directing the defendants to make refunds to persons who have already had their public assistance checks reduced. Plaintiff's motion, will be granted in part and denied in part.

In order to understand the present position of the parties, it is necessary to review the several steps that have occurred thus far in the litigation. After the Department began reducing the second August public assistance check to reflect the amount advanced to purchase the food stamps, the plaintiffs instituted this action on August 24, 1977. On that date, upon plaintiff's motion, Judge Van Artsdalen, the emergency judge, entered a temporary restraining order which enjoined defendants from reducing public assistance checks on account of the credit food stamp arrangement and to return to all those recipients whose checks had been reduced the full amount that had been deducted. On September 1, 1977 after a hearing to extend the temporary restraining order, Judge Van Artsdalen modified his earlier order so as not to require the defendants to refund the amount already deducted from public assistance checks and further to allow the defendants to reduce the final checks to be received by those public assistance recipients of whom the State had prior notice were no longer going to be eligible for assistance. On September 9, 1977, after agreement of all the parties, this Court extended the temporary restraining order, as modified, and set it to expire on September 23, 1977 at 6:00 p. m.

The plaintiffs' motion for a preliminary injunction is based on constitutional and statutory challenges to the legality of the Department of Public Welfare's credit food stamp program, the recoupment provisions thereunder and the procedures the Department employed to recover the advance under the program. As to the program, the plaintiffs claim that the Department should

have issued "free" rather than "credit" food stamps and by establishing the "credit" program the Department denied the plaintiffs equal protection of the laws and violated the federal Food Stamp Act, 7 U.S.C. § 2011 et seq., and the regulations promulgated thereunder. The recoupment provisions of the program are assailed as unauthorized by the Food Stamp Act, the Social Security Act, 42 U.S.C. § 301 et seq. and the regulations established under these acts. In addition, the plaintiffs claim that the procedures employed to recover the advances under the program violated the Social Security Act and the regulations thereunder and the Due Process Clause of the Fourteenth Amendment.

The Court finds that it has jurisdiction over both the plaintiffs' statutory and constitutional claims. As plaintiffs bring this action under 42 U.S.C. § 1983, this Court has jurisdiction over the constitutional claims under 28 U.S.C. § 1343(3). And since the plaintiffs' constitutional claims to due process and equal protection of the laws are not insubstantial, this Court also has pendent jurisdiction over plaintiffs' statutory claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

As this Court now reviews the merits of the plaintiffs' motion for a preliminary injunction, it is necessary to delineate what standard must be used to determine whether the plaintiffs' request will be granted. The United States Supreme Court instructed in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) that

> The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits. It is recognized, however, that a district court must weigh carefully the interests on both sides. *Id.* at 931, 95 S.Ct. at 2568.

After reviewing the facts and law involved in this case and applying the standard enunciated in *Doran v. Salem Inn, Inc.,* this Court finds that the plaintiffs are entitled to a preliminary injunction.

Turning to the question of whether the plaintiffs have established that it is likely that they will prevail on the merits, this Court believes that it is likely that at least, in part, the plaintiffs will be successful on their claims. First, plaintiffs have contested the legal viability of the credit food stamp program instituted by the Department of Public Welfare. Based on the Equal Protection Clause of the Fourteenth Amendment and the Food Stamp Act, 7 U.S.C. § 2011 et seq., itself, plaintiffs contend that free, rather than credit food stamps should have been issued to those persons who did not receive their public assistance checks in the first three weeks of August. Under 7 U.S.C. § 2016, the maximum charge for a food stamp allotment is thirty percent of household income. Plaintiffs argue that as they were not receiving any income in the beginning of August when they wanted to obtain food stamps, the food stamps should have been issued pursuant to the Food Stamp Act without monetary consideration. The Department of Agriculture defines monthly income (that which is to be applied in determining household income) as "all income which is received or *anticipated* to be received during the month," (emphasis added). 7 C.F.R. § 271.3(c)(1). The defendants argue that it could have been anticipated that the plaintiffs would receive their public assistance checks during the month of August. Plaintiffs, on the other hand, urge this Court to recognize that there was no reason for the Department to anticipate that such indefinitely suspended income would be received by the plaintiffs during the month and therefore they should have been considered to have no income during the month of August and consequently issued free food stamps under the Food Stamp Act. To bolster their position the defendants ask us to take judicial notice of the fact that the flow of monies in the Commonwealth has never been interrupted for an entire month due to the failure of the legislature to pass a budget; upon recognizing this fact, the

defendants then would have this Court find that it was reasonable to anticipate that the plaintiffs would receive their public assistance checks during the month. While the Court may at the full hearing for an injunction take judicial notice of the Commonwealth's past record, it does not necessarily lead the Court to the conclusion that it was reasonable to anticipate that the plaintiffs would receive their public assistance checks during August. The checks were in fact received in August, but not until after August 20th, heading toward the conclusion of the month. The question that must be asked is not whether the checks should have been anticipated to be received sometime in the future, but sometime in the month of August. The answer to this question is not clear to the Court and it is quite possible that when dealing with the necessities of life, such as food, one should be more conservative in determining what events should be anticipated.

However, even if the Court were to find that the public assistance checks should have been anticipated to be received during the month of August, the plaintiffs would then ask the Court to rule that the use of the concept of anticipated income under the Department of Agriculture's regulations is contrary to the Food Stamp Act and therefore improper. It appears that only one case has been decided which addresses this issue. In *Gutierrez v. Butz,* 415 F.Supp. 827 (D.D.C.1976), plaintiffs challenged the use of the concept of anticipated income as it applied to migrant workers. Apparently, migrant workers who applied for food stamps at the commencement of the work season and who had no available income would either be denied food stamps or required to pay a very high price for them because the state had determined that it could be anticipated that later during the month they would obtain sufficient income to purchase food at regular prices. In *Gutierrez* the plaintiffs did not challenge the finding that such income could be anticipated to be received during the month; they did contest a process which allowed "the family to go hungry for one to three week

intervals between certification and the actual receipt of the anticipated income." *Id.* at 830. The *Gutierrez* court found that the Department of Agriculture had exceeded the scope of its authority under the Food Stamp Act in promulgating the anticipated income concept in as much as it was contrary to the mandate of the Food Stamp Act which required needy families to be supplied sufficient funds to obtain food. Without striking down the entire regulation, the Court, in that case, found the provision violative of the Act as applied to households which were destitute of income and resources at the time of application for food stamp assistance. Without resolving the issue now, it should be said that the reasoning that lead to the decision in *Gutierrez* may be found controlling in this case. Here when the plaintiffs needed food stamps in the beginning of August they had no income, even though as in *Gutierrez* income might be anticipated to be received during the month. And as articulated in *Gutierrez,* it is the mandate of the Food Stamp Act to supply such people as those in the plaintiffs' situation with the appropriate assistance so that they can feed themselves. Defendants argue that *Gutierrez* is inapposite here, because unlike this case, there the migrant workers were not guaranteed retroactive payments. However, the workers in *Gutierrez* were not challenging the fact that they would have money at the end of the month to pay their food bills; in fact, it appears that they admitted that fact. Rather, they were questioning the present denial of assistance at a time when they had no money, which it appears is the same challenge that the plaintiffs in this case have presented to the Court. And it should be noted that, although the migrant workers did not challenge the assumption they would have the money at the end of the month to support their nutritional needs, the Court in *Gutierrez* did not order that the migrant workers be issued food stamps on credit. Although this Court will not decide at this time the issues presented of whether the Department of Public Welfare's credit program

contravened either the Food Stamp regulations or the Food Stamp Act, the Court does now find that it is reasonably likely that the plaintiffs may prevail on one or both of these claims.

The plaintiffs also claim that the credit program violated the Equal Protection Clause of the Fourteenth Amendment invidiously discriminating between non-public assistance by recipients whose income was indefinitely suspended and who were reauthorized food stamps to reflect the non-receipt of the suspended income and not on any credit arrangement and the treatment of these plaintiffs. As this claim has neither been briefed or discussed in oral argument by either counsel and necessarily is dependent on a decision regarding whether the plaintiffs had income under the regulations involved, the Court will refrain from further discussion of the issue until after the hearing for a permanent injunction.

The second claim put forth by the plaintiffs to support their motion for a preliminary injunction is the argument that the recoupment provisions of the Department of Public Welfare's credit program are not authorized by the Food Stamp Act, 7 U.S.C. § 2011 et seq., the Social Security Act, 42 U.S.C. § 301 et seq., or the regulations promulgated under these acts. Apparently, the plaintiffs are correct in their assertion that the regulations and the acts do not explicitly authorize this recoupment plan. Under the Food Stamp regulations there is no provision for recoupment if excess free coupons are issued; rather a demand must be made asking the recipient to return the excess. 7 C.F.R. 271.7(f). Under the Social Security Act regulations, generally recoupment of an overpayment is not allowed unless the recipient has income or resources "exclusive of the current assistance payment currently available in the amount by which the agency proposes to reduce payments." 45 C.F.R. 233.20(12)(i)(A)(1). As it seems the Department has not made the determination required by 45 C.F.R. 233.-20(12)(i)(A)(1) regarding these plaintiffs, it could not recoup the claimed extra payment under this regulation. Under 45 C.F.R. § 233.20(12)(i)(A)(2) a recoupment without

such a determination is allowed if there is an overpayment caused by the recipient's willful withholding of information and then only under paragraph (f) of that section if it limits the payments that may be deducted at any one time so as not to cause undue hardship on recipients. This latter provision in the regulations does not appear to apply in this case. Furthermore, there does not seem to be any explicit authorization to recoup food stamp overpayments from public assistance checks.

However, the lack of specific authorization for recovery of the outlaid funds in this case does not resolve the question of whether the recoupment provisions in the Department's credit food stamp program are permissible. Defendants' witnesses in the September 1, 1977 hearing before Judge Van Artsdalen asserted that this credit food stamp program cost the government three million dollars. Thus, it is understandable that if the food stamps were correctly issued on credit, rather than for no consideration, the defendants would have a substantial interest in recovering the expended funds. The defendants assert that the recoupment regulations found in the Food Stamp and Social Security Act regulations do not fit the peculiar circumstances of this emergency program. This in fact might be the case. In *Hagans v. Berger,* 536 F.2d 525 (2d Cir. 1976), the New York State Department of Social Services had promulgated a regulation which allowed the state to make advance allowances of rent subsidies to recipients before the time when their allowances were due, in order to prevent the eviction of recipient families. This program was instituted because numerous recipients diverted shelter allowances to other purposes, became delinquent in rental payments, and were thereby threatened with eviction. Under the regulations, these advances were only allowed if the recipient requested such advances in writing and also requested that his or her grant be reduced to reflect the advance in equal amounts over the next six months. When this regulation was challenged under the recoupment procedures of the Social Security Act and

its regulations, the Second Circuit found that the recoupment provisions did not apply since the regulations spoke to recoupment of an "overpayment" and an overpayment was defined under the regulations as a "financial assistance payment received by or for an assistance unit, for the review month, which is in excess by at least $5.00 of the amount that should have been paid to such assistance unit." 45 C.F.R. 205.-40(a)(4). The Court found that the advance allowance could not be characterized as an "excess over the amount that should have been paid," *Hagans v. Berger,* 536 F.2d 525 at 532, as the state intentionally authorized the advance. *Hagans* may give this Court instruction on how to reconcile the recoupment provisions under the regulations with the program for recovery of the credit food stamps in this case. Again, this issue will be resolved in later proceedings, but *Hagans* puts substantial doubt on whether the plaintiffs' claim on this issue is meritorious.

However, it still should be recognized that even if the Court finds that it is possible for the Department to seek recovery from the plaintiffs without specific authorization by the regulations, it would appear to this Court that the *method* chosen to recover the amount expended by the government should be subjected to some type of testing to determine whether it is consistent with the Food Stamp and Social Security Acts. In *Hagans,* the defendants sought to recover the allowance over a six month period; here the defendants seek to secure repayment to the Commonwealth by reducing one assistance check. As stated above, while generally the Social Security regulations do not allow recoupment from assistance checks unless the state can show that the recipient has other income equal to the amount sought to be recouped, even when recoupment is allowed from assistance checks because there has been a withholding of information by the recipient, the state is required to insure that the recoupment does not visit undue hardship upon the recipient. Furthermore, when prior regulations that generally authorized recoupment from public assistance checks without a showing of current ability to

sustain such a reduction were challenged in the courts, they were struck down as inconsistent with the policy of the Social Security Act since these regulations did not reflect a concern with the present ability of the recipient to financially manage the burden of a present reduction. *See National Welfare Rights Organization v. Weinberger,* 377 F.Supp. 861 (D.D.C.1974). There appears then to be a recognition that although a recipient may have received an overpayment in the past, when recoupment is sought that person, who once received a bonus, may not have the present ability to repay that bonus and such a burden may be placed upon that person if he or she was required to make present full repayment as to be contrary to the intent of the Social Security Act. Thus, although the plaintiffs have not shown a likelihood of success on their claim that as the recoupment provisions were not authorized by the regulations plaintiffs are entitled to judgment, there still remains a strong possibility that the recoupment program designed by the Department of Public Welfare could not be sustained under the Social Security Act. Further discussion and information (such as what percentage of a recipient's present public assistance check will be recouped under the state's program) appears necessary to finally resolve this issue.

Finally, plaintiffs move for a preliminary injunction on the grounds that the procedural protections afforded the plaintiffs, and the class they seek to represent, when the Department began reducing assistance checks failed to meet the standards established by the applicable Social Security regulations and that they also violated the Due Process Clause of the Fourteenth Amendment. When the Department of Public Welfare began reducing the checks of recipients they failed to give any notice to recipients of the action being taken, the reasons for it and the recipients' rights to hearings about the action. In fact, the defendants admit that such recipients did not receive such notice until after September 16, 1977; however, the state claims that the failure to give notice was inadvertent and that after

the discovery of this error they developed a special computer program and mailed the notices out. Of course, it should be noted that as the plaintiffs filed this suit on August 24, 1977, the defendants had notice of their own error as of that date and the mistake was not corrected for three weeks.

Plaintiffs' claim that the failure to give notice violated the regulations appears to have substantial merit. Under the Social Security regulations, generally, timely notice is required when the intended official action is to discontinue, terminate, suspend or reduce assistance. 45 C.F.R. 205.-10(a)(4)(i). Timely notice requires that notice be mailed at least ten (10) days prior to the date on which the action of the Department will become effective. 45 C.F.R. 205.-10(a)(4)(A). In certain cases, adequate notice is sufficient. Adequate notice is a written notice, given prior to or contemporaneous with the intended action, that includes a statement of what action the agency intends to take, the reasons for that action, the regulations supporting the action, and the right to request a hearing. 45 C.F.R. 205.10(a)(4)(i)(B). In this case neither timely nor adequate notice was given and therefore it appears likely that plaintiffs will succeed on this claim.

However, it will be important to resolve whether adequate or timely notice is required. Unlike adequate notice, timely notice, which gives the recipient more time to plan for the intended agency action, also allows the recipient to continue receiving assistance at its present level pending a decision after a hearing, if the recipient requests such a hearing. Plaintiffs argue that timely notice was required in this case. Defendants contend that as the adequate notice procedures received prior approval by the United States Department of Agriculture such notice is sufficient. It is unclear to this Court why such prior approval would remedy a deficiency in notice requirements under the regulations, if there was one, and this Court would ask the defendants for further explanation. Assuming that such prior approval by the federal agency does not allow for judgment in the defendant's favor on this issue, the question is whether timely or adequate notice is required under the regulations. Although, there are several exceptions to the timely notice requirement, the only one that would appear possibly applicable in this case is stated in 45 C.F.R. 205.10(a)(4)(i)(B)(4) which provides that timely notice may be suspended with and adequate notice will be sufficient when

the agency receives a clear written statement, signed by a recipient that he no longer wishes assistance, or that gives information which requires termination or reduction of assistance and the recipient has indicated, in writing, that he understands that this must be the consequence of supplying such information.

Plaintiffs claim that their case does not fall within this exception, even though they gave a written statement giving information which could cause their assistance checks to be reduced. This Court finds that it is likely that their claim is meritorious. Prior to the time when this regulation was promulgated previous regulations attempting to delineate when adequate notice was sufficient had been struck down by the courts. When this regulation was promulgated, the issuing agency sought ratification of it by the enjoining court. In passing on the constitutionality of this section the Court in *Harrel v. Harder,* 369 F.Supp. 810 (D.Conn.1974), outlined the premise upon which the regulation was approved: "Needless to say, such statements must be voluntary and not coerced in any way." *Id.* at 821. Given the circumstances under which these written statements were executed, i. e., the plaintiffs, without any assistance checks, were in desperate need for free food stamps when asked to sign the statement, it would be hard to say that the plaintiffs' assertion that this exception to the timely notice requirement is inapplicable is without substantial merit.

Plaintiffs further contend that under the due process standard outlined in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the defendants were constitutionally required to give timely notice and an opportunity for a hearing prior to the reduction of these checks. In *Gold-*

*berg,* the Supreme Court held that due process required timely notice and an opportunity for a hearing as well as other procedural rights prior to termination of welfare assistance. Such procedural protections have been extended to actions for reductions of assistance checks. *See Caldwell v. Laupheimer,* 311 F.Supp. 853 (E.D. Pa.1969). In *Brower v. Wohlgemuth,* 371 F.Supp. 863 (E.D.Pa.1974) and *Brown v. Wohlgemuth,* 371 F.Supp. 1035 (W.D.Pa. 1974), plaintiffs' public assistance checks were withheld by the state, because earlier that month the state claimed that the plaintiffs had been issued two checks rather than one check as scheduled. The Courts in *Brower* and *Brown* found that the plaintiffs were entitled to notice and a hearing prior to the withholding of the assistance checks. While the defendants attempt to distinguish the case before the Court from *Brown* and *Brower* on the basis that in *Brower* the Court had been particularly concerned with persons who had not realized that the Commonwealth had made a mistake and spent the money in good faith, it should be noted that in *Brown* the Court instructed that without giving the procedural protections afforded in *Goldberg,*

> The state cannot withhold or suspend grants of aid to needy, dependent children in order to recoup prior duplicate assistance payments made in error by the State even if the parent or other eligible recipient has fraudulently acquired the duplicate payment. *Brown v. Wohlgemuth,* 371 F.Supp. 1035 (E.D.Pa.1974).

Here the plaintiffs were not afforded such procedural protections. In *Harrel v. Harder,* 369 F.Supp. 810 (D.Conn.1974), the Court, relying on the instructions given in *Goldberg,* pointed out that

> The pretermination procedural requirements have one function only: "to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." *Goldberg v. Kelly,* 397 U.S. at 267, 90 S.Ct. at 1020. Thus, if dispensing with timely notice (and, perforce, discontinuing assist-

ance before the hearing) will neither affect the likelihood of the agency's rendering an erroneous decision nor subject the recipient to "brutal need," the necessity for provision of such notice is eliminated. *Harrel v. Harder,* 369 F.Supp. at 820.

However, in this case it seems likely that timely notice and a hearing might have prevented the agency from rendering an erroneous decision and from subjecting the plaintiffs to severe burdens. The questions being discussed by this Court, as to whether food stamps should have been issued for credit or for free, whether the recoupment procedures were legal, and whether, if they were legal, a determination of hardship had to be made and what the determination would have been, could possibly have been resolved if there had been a hearing. A prior hearing then could possibly have saved the plaintiffs from the "brutal need" which a reduction in an assistance check apparently leads to when there is a deduction from a current assistance payment to account for an earlier overpayment. *See Cooper v. Laupheimer,* 316 F.Supp. 264 (E.D.Pa.1970). Although this Court will not presently resolve the issues of whether due process or the regulations under the applicable statutes command timely notice, there is sufficient reason to decide that it is likely that the plaintiffs will be meritorious on these claims.

Having decided that there is a likelihood that the plaintiffs will prevail, at least in part, on their claims, the Court must now look to whether there has been a showing that without this injunction plaintiffs will suffer irreparable harm. In order to make this determination the Court will divide the plaintiffs into three categories: (1) those plaintiffs who received food stamps under the credit program but who have not had their checks reduced and are not going off the public assistance rolls presently; (2) those plaintiffs who received food stamps under the credit program, but who have had their assistance checks reduced; and (3) those plaintiffs who have not had their assistance checks reduced because of participation in the credit food stamp program but

are persons whom the Department of Public Welfare have received notice are going off of the public assistance rolls.

This Court finds that if the defendants are allowed to reduce the checks of the first category of plaintiffs, these plaintiffs will suffer irreparable harm. In those cases where the courts have recognized that timely notice is required even when the state is only reducing a person's assistance check to recoup for an overpayment, these courts have acknowledged that allowing the government to recover the amount due from a current assistance check subjects the recipient to a dreadful burden. *See, e. g., Brown v. Wohlgemuth,* 371 F.Supp. 1035 (W.D.Pa.1974). In recognition of this fact of life, this Court finds that requiring the plaintiffs to now suffer that burden, pending final decision of their case, will subject them to the irreparable harm of not having sufficient funds at this time to provide for their needs.

However, as to the second and third category of plaintiffs, this Court does not find as strong a showing of irreparable injury. Unfortunately, the second category of plaintiffs have already suffered by having their checks reduced; although additional funds now would perhaps help them, such funds will not save them from the irreparable harm they have already sustained. It appears that allowing these plaintiffs to recover, if successful, at the conclusion of this litigation, rather than at the present time, will not lead to any more harm than they have already sustained. And in regard to the third group of plaintiffs, this Court also determines that since they will no longer be eligible for assistance when the defendants make the reduction, and presumably no longer in need of assistance, their showing of irreparable harm by having the state reduce their last assistance check is again not as strong as that established by the first category of plaintiffs.

When issuing a preliminary injunction, not only must the Court determine whether it is likely that plaintiffs will prevail on the merits and whether they have established that irreparable harm will result without the entering of the preliminary injunction but it must also balance the competing interests of the parties. Here the Court finds that as to the first category of plaintiffs, the state has not shown a very strong interest in the disallowance of a preliminary injunction. As the Supreme Court found in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) that the government has a strong interest in seeing that all those eligible to receive assistance are provided with it in order to comply with the policies behind the public assistance acts, it held that

> Thus, the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens. *Id.* at 298, 90 S.Ct. at 1019.

As to this category of plaintiffs the defendants have made no claim of fiscal burdens pending determination of this matter by leaving the recipients with the funds that otherwise would have been deducted from their checks under the credit food plan. Thus, in balancing the defendants' needs against the plaintiffs' showing of a likelihood to succeed on the merits, these plaintiffs' showing of irreparable injury without the injunction, and the government's own interest in seeing that these recipients' checks are not improperly reduced, the Court will preliminarily enjoin the defendants from reducing these plaintiffs' assistance checks in order to recoup the alleged credit extended them.

■ On the other hand, this Court finds that the defendants' interest in preserving its fiscal resources justifies denying a preliminary injunction that would either compel them to refund the amounts already recovered from the second category of plaintiffs or disallow them to reduce the last checks to be received under public assistance of those persons who the Department of Public Welfare has prior notice are going off the public assistance rolls. As the second group of plaintiffs have not estab-

lished as strong a showing of irreparable harm as did the first category of plaintiffs and the fiscal and administrative costs involved in refunding the amount by which these plaintiffs' checks were reduced would be substantial, the plaintiffs' motion for this part of the preliminary injunction will be denied. The Court will also allow the defendants to reduce the final checks to be received by those recipients who the Department has prior notice are going off the public assistance rolls. The defendants have claimed that if they were not allowed to make this reduction it would cost the state $170,000 a month for each month the injunction remained in effect. Because this third category of plaintiffs have not made a very strong showing of irreparable injury, this Court finds that the state's competing needs for fiscal conservation outweighs the needs of these plaintiffs. Therefore, an order in accordance with this opinion will be entered.